The lower court has correctly set out the issues and determined the case in the following written opinion:
"This suit is a result of an intersection collision between automobiles operated by the plaintiff, Dr. B.J. Cole, and the defendant, Mr. B.A. Sherrill. The accident occurred on the morning of July 6, 1940, at the intersection of Robinson Place and Line Avenue, in the city of Shreveport.
"The intersection is quite irregular because of an offset in Robinson Place west of Line Avenue. To the east of Line Avenue, Robinson Place is an ordinary street 24 feet wide, whereas, on the west side of Line Avenue it is a boulevard or two paved portions divided by a neutral ground. The boulevard is 60 feet in width. In other words, each lane is 20 feet in width and the neutral ground is also 20 feet wide. Because of the offset in Robinson Place going west it is necessary for cars traveling west on Robinson Place to travel in about a 45 degree angle and a distance of some 60 feet northwesterly on Line Avenue before reaching the western curb line of Line Avenue. To further *Page 207 
explain this offset, if Robinson Place east of Line Avenue were projected due west it would only touch about six feet of the south portion of Robinson Place boulevard on the west; in other words, the south curb of Robinson Place cast of Line Avenue is only about 18 feet south of the south curb of Robinson Place west of Line Avenue, whereas, the north curb of Robinson Place east of Line Avenue is about 54 feet south of the north curb of Robinson Place west of Line Avenue. There is a 6 1/2% grade up in approaching Line Avenue from the east on Robinson Place and also a 6% upgrade in approaching Robinson Place from the north on Line Avenue.
"The plaintiff was traveling south on Line Avenue and the defendant was driving in a northwesterly direction in Line Avenue in attempting to negotiate a crossing from Robinson Place east of Line Avenue to the boulevard on the west of Line Avenue at the time of the collision.
"Plaintiff alleges that he was driving at an approximate speed of 20 to 30 miles per hour and on his right side of Line Avenue, and that it was not until he had entered this intersection that he saw the defendant approaching from the left. That he immediately applied his brakes and the accident occurred at about the center of the intersection or slightly to the south of the center. Plaintiff charges Mr. Sherrill with five acts of negligence: (1) failing to observe the stop sign; (2) failing to keep a proper lookout; (3) failing to recognize plaintiff's right of way; (4) failing to observe the preemption of the intersection by the plaintiff; and (5) failing to avail himself of the last clear chance to avoid the accident.
"The defendant denied all the acts of negligence alleged by plaintiff and in his reconventional demand alleges that plaintiff was traveling at an excessive rate of speed and failing to keep his car under proper control. In addition to these charges, defendant also alleges plaintiff to have been guilty of substantially the same acts of negligence as alleged by plaintiff in his petition. In the alternative, the defendant pleads contributory negligence.
"We have concluded that this accident was due solely to the negligence of the defendant in failing to maintain a proper lookout and in failing to observe properly the stop sign in crossing Line Avenue under the conditions existing at this intersection. It is admitted that Line Avenue was a right of way street and that there was a stop sign and line across Robinson Place.
"Mr. Sherrill testified that he was familiar with this intersection and had traveled in that area many times. This being true, he was undoubtedly aware of the danger in making the crossing that was necessary to reach Robinson Place on the west. In other words, it was necessary for defendant to travel in a northwesterly direction some 60 or more feet in Line Avenue.
"A number of witnesses testified as to the distance that cars could be observed approaching from the north on Line Avenue if one was parked at the yellow line on Robinson Place east of Line Avenue. This estimate varied from 178 to over 300 feet. The yellow line is slightly over 12 feet back of the east curb line of Line Avenue. Witnesses for both plaintiff and defendant testified that if a car was driven a few feet past the yellow line that the view was clear for over two blocks to the north.
"The rule in such cases is well stated in Blashfield's Cyclopedia of Automobile Law and Practice to be as follows: `The proper place to stop in order to comply with the duty of stopping upon coming to an intersection with a right of way street or one where a stop sign is posted may be a question of fact. The standard approved by the courts is that a driver, thus under a duty to stop, should do so at a place where the view is sufficiently clear to permit observation of approaching traffic.' Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 2, § 1035, page 220.
"We shall quote from the testimony of the defendant which, in our opinion, places the cause of this accident on his failure to keep a proper lookout, and also his failure to properly observe the stop sign in view of the unusual situation created by this intersection:
"`Q. Are you familiar with Robinson Place? A. Yes.
"`Q. You were proceeding west on Robinson Place? A. Yes.
"`Q. Are you familiar with that street? A. Yes.
"`Q. Are you familiar with that intersection there? A. Yes.
"`Q. You have driven there a number of times? A. Yes, sir. *Page 208 
"`Q. You knew it was a stop street? A. Yes.
"`Q. You knew it was a stop street and the fact that it was a dangerous intersection? A. Yes, that opposite street makes it obscure.
* * * * *
"`Q. Wasn't the front of your car pointed in a northwesterly direction? A. Yes, it would be.
"`Q. You would have had to do that to have made your way into Robinson Place, wouldn't you? A. Yes.'
"All of the above testimony was given by the defendant on cross-examination. In further explanation of the accident this defendant testified on direct examination as follows:
"`Q. Have you ever been out in that particular neighborhood before, Mr. Sherrill? A. Oh, yes, many times.
"`Q. Were you familiar with the various streets that have right of ways out there? A. Yes, sir.
"`Q. When you came up to Line Avenue where did you stop your car? A. I stopped it over the yellow mark a little bit.
"`Q. Did you stop at the stop sign? A. I think I drove over a little.
"`Q. Did you stop it? A. Across the middle line a foot or two.
"`Q. As you started across the street did you continue to look for cars that was across the street? A. I was looking; I had my head down looking straight across where I was going; I know it broke the steering wheel off when the lick hit, I had my head out and I failed to see a car in there.
"`Q. After you looked all directions for cars, then what did you do? A. I went across like I had the right of way.'
"Again on cross-examination Mr. Sherrill further testified as to the accident as follows:
"`Q. I mean you did not see any man driving a car which collided with you later, turn out to be Dr. Cole, before the collision occurred? A. No.
"`Q. You came to that intersection, stopped and looked north and you did not see any car at all? A. No.
"`Q. You could see two or three hundred feet? A. Yes, sir, to my right, that is, I was going west and I could see a couple of hundred feet down to that alley, and I could see back the other way that there was not a car in sight. I stopped the car, I was looking, I was looking the way I was going and blump! I was hit!
"`Q. You did not apply your brakes, of course, because you did not see anything? A. I did not see anything to apply them for.'
"In other words, our conclusion from the testimony is definite that if Mr. Sherrill stopped he was in such a position with reference to the yellow line that he could not properly observe the traffic on the dangerous intersection that he was attempting to traverse. Certainly, the obligation was imposed on this defendant to so drive as to observe the conditions on Line Avenue and particularly is this true where he was familiar with the intersection and the fact that he would be forced to travel about 60 feet in Line Avenue in negotiating this crossing. Had he stopped his car three or four feet over the yellow line he could have seen the traffic for over two blocks and ordinary care would dictate that he do this since he was familiar with the intersection.
"We are quite aware of the doctrine that a person crossing a right of way street is not required to be constantly on the alert and observing cars during the entire trip through the intersection, but at the same time a driver is required to observe the conditions of traffic before entering therein, and had Mr. Sherrill done this no accident could have occurred.
"Counsel for the defendant estimates the distance traveled from the curb line to the point of contact at 44 feet. Had Mr. Sherrill looked to his right he would have observed the approaching car of Dr. Cole and therefore have had ample opportunity to stop before actually entering Line Avenue. This was clearly the duty of the defendant in view of the obstructions observed by him and for the additional reason that he would not be making a regular crossing, but one that required his presence in Line Avenue to the extent necessary in this case.
"Many of the cases cited by counsel for defendant with respect to rights and duties of persons preempting intersections and operating cars on right of way streets are not apposite to this case because of the unusual conditions which we have heretofore discussed. For that reason we will not review them in this opinion. *Page 209 
"We shall now review the various acts of negligence charged against the plaintiff in order to determine if he is guilty of contributory negligence barring recovery by him.
"Dr. Cole is charged with driving at an excessive rate of speed and failing to have his car under control. Neither charge is supported by the testimony. The only witness to testify as to the speed was Dr. Cole, who fixed his speed at between 25 and 30 miles per hour and, in passing, we might comment that he seemed most fair and reasonable in all of his testimony. It is true that the impact turned the car of the defendant partially around, and that Dr. Cole's car traveled some 30 feet after the impact. Unquestionably, Dr. Cole was traveling faster than Mr. Sherrill and the position of the cars at the time of the collision would naturally result in the slower car being partially turned. Neither can we say that the failure of plaintiff's car to stop sooner than the collision proves any excessive speed. Very likely after the collision there was no effort to keep the brakes applied on plaintiff's car.
"Neither do we find that the defendant had preempted this intersection. This conclusion is based on the nature of the intersection which we have heretofore discussed and for the additional reason that plaintiff was on a right of way street and the cars arrived at approximately the same time. Under such circumstances the mere fact that the driver on the disfavored street might have actually entered the intersection slightly ahead of the other does not amount to a preemption which would give him the right of way.
"The charge that Dr. Cole was not maintaining a proper lookout is not supported by the testimony. Dr. Cole was traveling on a right of way street and the same obligations are not imposed on him that apply in other situations. However, his own testimony, and that is all we have here, is that he saw the defendant just as he was coming into Line Avenue, and that immediately he put on his brakes and attempted to stop, and swerved slightly to the right. Hardly anything else could have been done by him to avoid this accident. Clearly the doctrine of last clear chance is not applicable. There is nothing in the record to support this doctrine for the reason that there was no opportunity for Dr. Cole to have done more than he did to avoid the accident, Dr. Cole saw the defendant about as soon as it was possible to do so, which was just as he was entering Line Avenue, and he immediately applied his brakes and swerved to the right.
"As usual, the question of damages is difficult in these cases. The following items have been established with certainty in this case:
"Damage to automobile of Dr. Cole $183.00 "Amount paid Miss Nesbit (special nurse in plaintiff's office during disability) ............. 75.00 "Amount paid Dr. Keith Mason for
services rendered patients ..... 42.00 "Amount paid Dr. Holman for services rendered patients of plaintiff ...................... 110.00
"Loss of fees in the following cases:
W.W. McCloud ..................... 50.00 B.F. Cook ........................ 50.00 Andrew Hernandez ................. 50.00 S.M. Bozeman ..................... 25.00 R. Jeffry ........................ 33.33 J.S. Norman ...................... 16.00 R.A. Bohatta ..................... 25.00 Hospital expenses ................ 30.00 ------- Total ............................ $689.33
"As a result of this accident Dr. Cole was unable to do any work for about three weeks; was unable to do his full work for seven weeks following the accident. He had six broken ribs, one of which was broken in two places, with some bruises and contusions about the face and side which were not serious. Dr. Cole testified that he still suffers from the injuries to his ribs after a hard day's work and often is awakened at night from the pain.
"We have attempted to consider all of the factors in this case in assessing damages and it is our conclusion that an award of $750.00, plus the other items, would be proper.
"There should, therefore, be judgment herein in favor of the plaintiff, Dr. B.J. Cole, and against the defendant, B.A. Sherrill, in the full sum of $1439.83, with legal interest from judicial demand until paid and all costs of this suit."
Defendant is prosecuting this appeal and plaintiff has answered the appeal praying for an increase in the amount of the award.
The case is not entirely without difficulty in deciding, due principally to the lack of testimony and not to any conflict of testimony. *Page 210 
There were only two eyewitnesses to the accident, one, the plaintiff, and the other the defendant, neither of whom attempted to estimate the speed of the other's automobile. Defendant never saw plaintiff or his car until after the accident had occurred and plaintiff only saw the defendant just after he, plaintiff, had entered the intersection, according to his testimony. The skid marks made by plaintiff's car, as shown by the photographs in the record, began about the north line of the intersection and there could be no reason for plaintiff to apply his brakes unless he saw defendant entering or in the intersection. We conclude that plaintiff discovered the defendant entering the intersection when plaintiff was a short distance north of the intersection and by the time he had applied his brakes and they had taken effect, his car had reached the north boundary of the intersection.
Plaintiff was on a right of way street and was not required to anticipate that defendant would enter the intersection when he, plaintiff, was as near to it as he was. His responsibility to be on the lookout for others entering from a less favored street was not as great as the duty imposed upon defendant entering from the less favored street to see that the street was clear.
There is no testimony to prove that the plaintiff was speeding and the physical facts are not sufficient to justify us in finding that he was speeding. His testimony is that he was traveling not over 30 miles per hour and there is no sound testimony, due to the uncertainty of distances traveled and length of skid marks, to justify us in finding that he was traveling at a greater rate of speed. We are convinced that plaintiff was nearing the intersection when defendant entered it and that defendant would have discovered him approaching if he had looked.
Our appreciation of defendant's testimony is that he stopped and looked before entering the intersection at a point where he could see from 178 to 300 feet up Line Avenue. That he did not see any car coming. That he then entered and proceeded angling across the street with his head down looking ahead and never saw plaintiff or his automobile until after the collision.
A policeman who appeared on the scene immediately after the accident testified that defendant told him that he did not stop before entering the intersection. Defendant denies making this statement and claims he was only semiconscious at the time. According to his testimony, as above valued, he was undoubtedly oblivious to what was going on around him. Apparently his mind was on other things than the traffic at this intersection or he would necessarily have seen or heard plaintiff's car some time before the impact occurred. If he was as lost in his thoughts before arriving at the intersection as he was after he entered it, it would be only reasonable to believe that he never stopped or looked before attempting to cross. We are convinced that if he did look he did not see what he should have seen, viz., plaintiff traveling south on Line Avenue and his failure to see him is not a legal excuse for the law holds him to see that which he could and should have seen.
Defendant was crossing the intersection at an angle of approximately 45 degrees toward the direction from which plaintiff was coming and why he did not see plaintiff before the impact occurred can only be explained by the total obliviousness of defendant to everything going on around him. If defendant were going to cross the intersection only 24 feet in width, he no doubt would have been justified in entering it after having seen no other car approach for a distance of 178 feet, but, in order for defendant to traverse the intersection he entered, he was forced to travel at an angle and for approximately 60 feet. Under these circumstances he should have looked for other traffic when he was at a place where he could see far enough up and down the street to be certain his way was clear. Plaintiff was traveling within the speed limits on a right of way street and there was not any legal reason for him to reduce his speed at this intersection.
The very fact that plaintiff was traveling within the speed allowed by law and on a right of way street when the collision occurred makes it certain that defendant entered the intersection at a time when it was unsafe for him to do so and had he kept a proper lookout, he would have discovered the danger of entering. It can make no difference whether he had reached the center of the intersection or had gone two-thirds across it before striking or being struck by plaintiff's car. Plaintiff was violating no law; he had the right of way *Page 211 
and did all that was possible for him to do to avoid the collision after defendant had created the emergency.
We fail to find any negligence on the part of plaintiff and defendant's negligence in not keeping a proper lookout and entering the intersection when it was unsafe to do so was the proximate cause of the accident.
The doctrine of last clear chance has no application here. If it did, it is our opinion that defendant had that last clear chance. Under his testimony he was traveling in low gear and very slowly and that he had traversed some 30 to 45 feet of the distance before the collision occurred. He had only to raise his head and eyes to see plaintiff approaching. He is therefore held to have seen. He could have stopped his car within a few feet and at any time after he entered the intersection and until within a few feet of the point of contact between the two cars and plaintiff would have passed safely. On the other hand, if plaintiff had seen, and we hold in the eyes of the law he did see defendant, when he was about to enter the intersection, he could have relied upon the assumption that defendant would not drive directly into his path but instead would recognize plaintiff's rights on the favored street and bring his car to a stop before blocking the street. However, the facts show that when defendant entered the intersection plaintiff was only a short distance north of it and that he immediately applied his brakes and did all any reasonable man could do under the circumstances to avoid the accident. Defendant is clearly liable to plaintiff for all damages caused him by the accident.
The items of damage to plaintiff's car, nurses' bills, sanitarium bill, amounts paid to Drs. Mason and Holman and loss of fees, etc., totalling $689.83, allowed by the lower court are correct.
Plaintiff complains of the award of $750 allowed him for pain, suffering, past and present, and for permanent injuries, viz., neuritis and neuralgia, after effects caused by the broken ribs.
The lower court has correctly related in its opinion the injuries suffered by plaintiff and stated that it had taken into consideration all of the factors in assessing damages. It is to be presumed that the lower court took into account the worth of the defendant, his ability to earn money, etc., as well as the fact that he was not covered by insurance to protect himself. These are all legal factors to be considered in assessing damages. It has never been considered good policy to bankrupt one to pay another even though the award granted is not in line with other cases involving the same injuries and might not fully compensate the plaintiff for the injuries he received. Fair justice between both parties must be arrived at. We feel sure the lower court has done that.
The judgment of the lower court is therefore affirmed, with costs.