Plaintiff, the owner and operator of a motor dump truck, claims of defendant corporation the sum of $1,401.70, alleging that his truck was damaged in a collision with a truck of defendant, and that the collision resulted entirely from the negligence of the driver of the said truck of defendant who, at the time, was acting within the scope of his employment.
Plaintiff alleges that the repairs to his truck cost $501.70, and that he lost the use of it for thirty days or more and thus lost earnings of $900. He charges that the driver of defendant's truck was negligent in that he was driving the truck at excessive speed; that he did not reduce his speed as he approached the intersection in which the collision occurred; that he did not keep a proper lookout ahead and did not have his truck under proper control.
The defendant denies practically all the allegations of the petition, though it admits its own corporate existence and that one of its trucks was in collision with plaintiff's truck. It denies that its driver was negligent in any way and avers that the accident resulted soley from the negligence of plaintiff himself "in failing to maintain a proper lookout for approaching traffic; in failing to have his truck under proper care and control and in failing to yield the right of way to another vehicle which reached the intersection slightly before or at approximately the same time and which was approaching plaintiff from his right". In the alternative, that it appears that there *Page 632 
was negligence on the part of the driver of defendant's truck, defendant avers that the proximate cause of the accident was the contributory negligence of plaintiff himself in the particulars alleged.
There was judgment for plaintiff for $801.70, made up of an award of $501.70 for the cost of repairing the truck and $300 for the loss of its use while it was being repaired. Defendant has appealed and plaintiff has answered the appeal praying that the amount of the award be increased to $1,401.70 as originally prayed for.
The accident occurred shortly after noon in the community known as Harvey, which is on the West Bank of the Mississippi River opposite the City of New Orleans. Plaintiff was driving his truck on Greffer Street towards the Mississippi River, and the truck of defendant was on a street sometimes, in the record, mentioned as Eighth Street, and sometimes as Eleventh Street, but which, in fact, seems to be Eighth Street. This Street parallels the Mississippi River. The truck of the defendant was on its way in an upriver direction, so that it approached the intersection from the righthand side of plaintiff. The intersecting corner was overgrown with shrubbery to such an extent that both drivers said that neither could obtain a view out the other street until his vehicle had practically entered the intersection. There were no eye witness except the two drivers.
Gayle, the plaintiff, says that he approached the intersection at about fifteen miles per hour and that when he reached it he reduced his speed to eight miles per hour; that he sounded his horn and entered and that, when he was about three-quarters of the distance across the intersection, "the J. Ray McDermott Company truck struck me and knocked me about twenty-five (25) feet forward into a ditch". He said that he did not see the other truck until "just when it was about to hit me". He said too that the truck of defendant was being operated at a speed of "not less than thirty-five miles per hour; probably more".
DeRoche, the driver of defendant's truck, says that as he approached the intersection he knew that he had the right of way over cars coming from his left and that, therefore, he looked in the other direction "towards the river". He says too, that his speed was "not more than twenty miles per hour"; that the other truck entered the intersection directly in his path and that his truck hit the other when both were "about half way across the intersection". He said too that neither he nor Gayle had sounded a warning by horn.
If the two vehicles reached the intersection at about the same time, then the right of way was with the defendant's truck, for it is provided in the State Highway Regulatory Statute — 286 of 1938, in § 3, paragraph (A) of Rule 11 (Right of Way) that: "When two vehicles approach or enter an intersection at approximately the same time, the driver approaching from the right shall have the right of way."
[1] Of course, this does not mean that a driver having the right of way blindly approach an intersection without taking precautions to see that it is safe for him to do so, but it does mean, when applied to the other vehicle, that the driver of that other vehicle must be on the alert to make certain that he does not enter the intersection in the face of apparent danger, and it means particularly that the driver of the vehicle which does not have the right of way must look in the direction from which vehicles having the right of way may be expected to approach, and must yield to the superior right of way of such vehicles.
In Cole v. Sherrill, La. App., 7 So.2d 205, 210, the Court of Appeal for the Second Circuit, said: "Plaintiff was on a right of way street and was not required to anticipate that defendant would enter the intersection when he, plaintiff, was as near to it as he was. His responsibility to be on the lookout for others entering from a less favored street was not as great as the duty imposed upon defendant entering from the less favored street to see that the street was clear."
It is very obvious that Gayle did not take such precautions. He says that he entered the intersection very slowly — eight miles per hour. If he did, then as he entered had he looked he would have seen the other truck approaching and he could easily have *Page 633 
stopped his truck and allowed the other to pass in front of him. The greater the speed of the other truck the more apparent was the danger of attempting to cross in front of it.
[2] Gayle claims that he had preempted the intersection. It is very evident from the ensuing accident that plaintiff could not have reached the intersection more than two or three seconds before defendant's truck, for if he was traveling at a speed of eight miles per hour, he was moving almost twelve feet per second and thus, in three seconds, he could have completely crossed the intersection. It was during that three seconds that the accident occurred. In Cole v. Sherrill, supra, the Court quoted from the opinion rendered by the District Judge, as follows: "Neither do we find that the defendant had preempted this intersection. This conclusion is based on the nature of the intersection which we have heretofore discussed and for the additional reason that plaintiff was on a right of way street and the cars arrived at approximately the same time. Under such circumstances the mere fact that the driver on the disfavored street might have actually entered the intersection slightly ahead of the other does not amount to a preemption which would give him the right of way."
What is meant by the preemption of an intersection in such a situation is clearly set forth in Waller v. Rapides Grocery Co., La. App., 22 So.2d 407, 409, in which the Court said, that while it is true, that a driver whose vehicle has actually preempted the intersection may not be negligent in failing to accord the right of way to the other vehicle, this is only true "* * * where such vehicle has pre-empted the intersection by a sufficient margin of both time and distance as would enable the driver of a vehicle approaching the intersection on a right-of-way thoroughfare to avoid a collision through the exercise of reasonable care."
We think that Gayle took no precautions whatever and that if he had exercised the slightest care as he entered the intersection, he would have seen defendant's truck approaching and would have stopped and avoided the accident.
We say again what we have often said before that "as a rule, such collisions could be avoided if the driver of either vehicle exercised proper care and caution." Guernsey v. Toye Bros. Yellow Cab Co., La. App., 172 So. 459, 461.
Whether DeRoche was at fault is of no moment. Whatever his negligence may have been there would have been no accident had Gayle exercised the care required of him by the dictates of common prudence and by the express requirements of law. Gayle was the author of his own misfortune, accordingly.
It is ordered, adjudged and decreed that the jugment appealed from be and it is annulled, avoided and reversed and that plaintiff's suit be and it is dismissed at his cost.
Reversed.