While the title of this case denominates the husband and wife to be plaintiffs, the petition was filed alone by Gottlieb A. Huerstel. He seeks to recover from defendants the sum of $650.85 for the damages allegedly suffered by his Cadillac automobile in an intersectional collision with an automobile-truck owned by L. Mangano Company and operated by its employee, of which truck the United States Casualty Company was liability insurer.
The accident occurred at Dauphine Street and St. Maurice Avenue in the City of New Orleans, in the forenoon of October 30, 1946. There was located on Dauphine Street a rail track upon which the New Orleans Public Service, Inc., operated streetcars.
Plaintiff ascribes the accident to the negligence of the driver of the truck, claiming that it was being driven down Dauphine Street at an excessive rate of speed and ran into the Cadillac, which had preempted the intersection and was more than halfway across. The defense is a denial of negligence on the part of the truck driver, and the charge that the accident resulted solely by virtue of the negligence of the operator of plaintiff's automobile in failing to stop at Dauphine Street and accord the truck the right of way. Alternatively, the defendants pleaded that the driver of the Cadillac was contributorily negligent. L. Mangano Company then assumed the position of plaintiff in reconvention, claiming $327.10 for the damage sustained by its truck.
The lower court rendered judgment in favor of plaintiff as prayed for and dismissed the reconventional demand, from which judgment defendants have prosecuted this present appeal.
The wife of plaintiff was driving the Cadillac on St. Maurice Avenue towards the river. She insists that she stopped at Dauphine Street and looked in both directions, and seeing no vehicles approaching, proceeded forward and had reached about the middle of the intersection when her car was struck.
Neal M. Blackwell, who was travelling on Dauphine Street in the direction of St. Maurice Avenue, asserted that when his car was about half a block from the intersection the truck passed it at a speed of between thirty and forty miles an hour and, without stopping, entered the intersection and crashed into the Huerstel automobile which was crossing at about ten or fifteen miles an hour. According to this witness, the truck attempted to swerve and go around the front of the Cadillac, but that maneuver was ineffective and the side of the truck came into contact with the front of the car. Blackwell stated that he knows Mrs. Huerstel stopped at Dauphine Street, because he saw the front fenders, wheels, and bumper of her car in a stationary position "for about a minute." Blackwell could not see the remainder of the Cadillac because of a structure on the corner, built flush with the property line, which obscured his view.
This testimony is corroborated in substantial detail by Mrs. Hughes, who was a passenger in the Blackwell car. However, Mrs. Hughes was unable to say whether the Cadillac stopped before entering the intersection.
Williams, the truck driver, was the only witness produced by defendants who testified regarding the occurrences at the intersection. He denied that he passed the Blackwell car or that he was speeding. His statement is that he had been travelling at about fifteen miles an hour, but *Page 462 
diminished his speed to about twelve miles just before reaching St. Maurice Avenue. Williams also mentioned that the corner was blind and that he could not see to his left because of the building, but that he was halfway in the intersection when the left side of the truck was hit by the Cadillac, which had not stopped. Just before the crash, Mrs. Huerstel threw up her hands and abandoned control of the Cadillac.
Ordinance 13,702, C.C.S., as amended, makes the emphatic provision that a vehicle, before crossing a street containing a car track, must come to a full stop, and that the driver must look and listen for approaching traffic. According to the testimony of Blackwell and Mrs. Huerstel, the Cadillac was brought to a stop before the attempt at crossing was made. However, we notice that Mrs. Huerstel testified:
"I looked to my left first. There was no streetcar or anything coming to my left, and I looked to my right and there was nothing coming.
* * * * * *
"From neither direction did I see anything coming. And the lefthand side is an open corner. To the right-hand side, I don't think you could see * * * you can't see too much beyond that corner. And there wasn't anything coming there when I started my car over the intersection."
Even though Mrs. Huerstel did stop at the intersection, she had complied with but one of the duties imposed upon her by the city ordinance. In addition to stopping, the ordinance makes it mandatory for a driver to look and listen, so as to carefully observe traffic conditions. Mrs. Huerstel was unable to see up Dauphine Street because the corner was blind, and under that circumstance it was her duty to have proceeded slowly and cautiously until her automobile had reached a point where there was no interference with her vision. Had this precaution been taken, there is no doubt that Mrs. Huerstel could and would have seen the oncoming truck, and we think that her failure to make certain, before coming out into the intersection, that her path was clear constitutes gross negligence. See Pancoast v. Cooperative Cab Co., La. App., 37 So.2d 452, and authorities therein cited.
There is no doubt that the truck was in close proximity when Mrs. Huerstel made the ill-timed attempt at crossing. This fact is clearly demonstrated by the testimony of Blackwell and his passenger, each of whom stated that the truck passed their car when it was in the middle of the block before St. Maurice Avenue, and that the truck was about 120 feet ahead of the Blackwell car when the collision occurred.
That the truck was speeding can hardly be doubted. Blackwell fixed its speed at between thirty and forty miles an hour; Mrs. Hughes said its speed was "awful." We place no reliance upon the statements of Williams that the Cadillac was going at forty or fifty miles an hour, while his own speed was about twelve miles an hour at the intersection.
We do not know on what premise the trial judge based his conclusions, but our scrutiny of the record leads to the belief that the accident was caused through the joint negligence of Mrs. Huerstel, who failed to look and listen, and the driver of the truck, who operated his vehicle at an excessive rate of speed. Neither owner of the vehicles involved should be allowed to recover damages.
For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from, insofar as it awards plaintiff $650.85, is reversed and plaintiff's suit is dismissed; in all other respects the judgment is affirmed. Plaintiff-appellee is to pay all costs.
Reversed in part
Affirmed in part. *Page 463