79 So.2d 635 (1955)
Louis SONNIER
v.
U. S. FIDELITY & GUARANTY CO.
No. 4012.
Court of Appeal of Louisiana, First Circuit.
April 22, 1955.
Davidson, Meaux, Onebane & Nehrbass, Lafayette, for appellant.
Dugas, Bean, Bertrand & Smith, Lafayette, for appellee.
LOTTINGER, Judge.
This is a suit for damages arising from a collision of automobiles at the intersection of St. Mary and Cherry Streets in the City of Lafayette, Louisiana. The Lower Court awarded damages for petitioner, and the defendant has taken this appeal.
The facts show that on the afternoon of April 4, 1954, at about 4:15 p. m. o'clock, the petitioner, Louis Sonnier, was driving his automobile westerly on St. Mary Street in Lafayette, Louisiana. At the same time, Father Doucree, the defendant's assured, was driving his Chevrolet in a southerly direction on Cherry Street in Lafayette. It is agreed by both parties, that the weather was clear, and that St. Mary Street bears a stop sign at its intersection with Cherry Street. The testimony indicates that plaintiff had failed to stop at the stop sign controlling traffic on St. Mary Street, and had entered the intersection when the vehicle driven by Father Doucree struck *636 petitioner's vehicle broadside. Father Doucree admitted that he was going at a speed of from 30 to 35 miles per hour immediately prior to the collision.
The petitioner and his witnesses, all of whom are either members of his family or are very close friends, claim that petitioner stopped before entering the intersection. The disinterested witnesses, on the other hand, were definite in their testimony that the petitioner did not heed the stop sign.
The Lower Court found both parties negligent, but based its judgment upon its finding that petitioner had pre-empted the intersection and was, therefore, accorded the right of way. Its findings, in this respect, are as follows:
"The evidence is clear that plaintiff was guilty of negligence in entering the intersection without stopping, in violation of the city traffic ordinance and in disregard of a stop sign placed on his street of travel pursuant to said traffic ordinance, and for failure to maintain a proper lookout for approaching vehicles. On the other hand, the defendant's assured was negligent in that by his own admission he was travelling in excess of the speed limit guessing that he was going about 35 or 40 miles per hour. Defendant's assured was on an errand of mercy and admits that he was in a hurry to reach his destination at Charity Hospital. He could not recall definitely if he applied his brakes and stated that he did not see plaintiff's car approaching from his left until it was too late. It is accordingly the finding of the Court that both parties were negligent, however, the court will further examine the question of proximate cause to determine the applicability of the so-called Doctrine of Last Clear Chance. Plaintiff pleaded pre-emption of the intersection and neither raised the question of last clear chance which is of no consequence. See Iglesias v. Campbell, La.App., 1937, 175 So. 145.
"There is no evidence of any speeding violation on the part of the plaintiff and unless his violation of the regulatory stop-sign ordinance was one of the proximate causes of the accident, it would not bar his right of recovery. The facts clearly show that plaintiff had almost reached the opposite end of the crossing when his vehicle was struck by defendant's assured.
"A review of the applicable jurisprudence of our state reveals that there are a number of cases analogous and almost identical with the situation presented in the instant matter. One of the landmark decisions is that entitled Boullion v. Bonin, La.App., 1 Cir., 1941, 2 So.2d 535, in which an intersectional accident involved two drivers, one of whom had violated the regulatory ordinance in failing to stop at a right of way street and the other who was travelling in excess of the speed limits, among other charges of negligence. The court ruled that both parties were negligent but applied tests of proximate cause and last clear chance in deciding the issues. The court opined that plaintiff was not the proximate cause of the accident through his failure to stop and failure to see defendant, but rested upon the defendant the full responsibility for the subsequent collision, saying, 2 So.2d at pages 540-541:
"`We therefore conclude that whether we base our opinion on the ground that the negligence of Boullion was not a proximate cause of the accident, or on the ground that Bonin had the last clear chance to avoid it as held in the former opinion, the result is the same. As already stated, the negligence of Boullion was not active and continuous up to the moment of the accident and was not concurrent with that of Bonin, but his negligence had become inactive when the collision occurred. The negligence of Bonin was not only active and continuous up to the moment of the collision but it was the direct and proximate cause of it. *637 Moreover, as pointed out in our former opinion, Bonin had the last clear chance to avoid the accident but failed to avoid it.'
"See also Duke v. Malone, La.App., 1 Cir., 1952, 57 So.2d 711, in which the late Judge Hugo Dore followed the general ruling set forth in the Boullion Case, supra. See also Stewart v. Keller, La.App., 36 So.2d 893, 19 Blashfield, Cyclopedia of Automobile Law & Practice, Vol. 4, Part 2, Sec. 2801 et seq.
"In the instant case, it is clear from the evidence and testimony that plaintiff had pre-empted the intersection and that his prior negligence was passive. However, the defendant's assured could have avoided the accident and his excessive speed and failure to see plaintiff were acts of active and continuous negligence without which the accident would not have occurred. The plaintiff's prior negligence had become inactive when the collision occurred."
We disagree with the findings of the Lower Court in two respects. First, the evidence conclusively establishes that Father Doucree was proceeding at a speed of from 30 to 35 miles per hour prior to the accident, instead of from 35 to 40, as was found by the Lower Court. Such a difference in speed is a minor one we admit. We do not agree furthermore with the finding of the Lower Court that the accident could have been avoided by Father Doucree or that he had the last clear chance.
The evidence clearly establishes that petitioner violated a city ordinance which required him to stop before entering the intersection. The Lower Court found that petitioner did not stop. Assuming, as was testified by petitioner and his witnesses, that he was travelling at a speed of 15 miles per hour. Then, in an equal period of time, he could traverse a distance of about one-half that of Father Doucree, who was admittedly travelling at a speed of from 30 to 35 miles per hour. Petitioner stated that, when he entered the intersection, there was no traffic for a distance of 100 to 125 feet. Let us assume again that Cherry Street is of average width of 40 feet. If the facts were such, then petitioner had ample time to clear the intersection before Father Doucree's vehicle would reach same.
We have assumed the width of Cherry Street in the preceding paragraph because, nowhere in the record is the width of the intersection given. In the absence of any indication of the width of either of the streets, we are unable to agree with the Court below that the accident was caused by the fault of the defendant's assured. In all of the cases cited by the Lower Court, the intersection was of such size as to enable the driver to take some action to avoid the collision. There is nothing in the record before us which leads us to the conclusion that the defendant's assured either failed to see petitioner's vehicle, or that he was presented with an opportunity to avoid the accident.
Furthermore, all of the disinterested witnesses testified that the impact occurred in the center of the intersection. Petitioner, on the other hand, testified that his front bumper was even with the sidewalk on the opposite side of Cherry Street when the impact took place. If we were to take the position, as shown by the disinterested witnesses, that the impact occurred at about the center of the street, it is evident that Father Doucree's vehicle must have been in the neighborhood of from 40 to 60 feet from the intersection when petitioner entered same. It appears to this Court that petitioner either failed to look, or failed to see what he should have seen. The posting of the stop sign at the intersection not only required petitioner to stop, but also required him to ascertain that there was no oncoming traffic which would interfere with his safely crossing the intersection.
The evidence shows that there was a large building at the corner to petitioner's right, thus making it a blind intersection insofar as traffic coming south on Cherry Street was concerned. The facts of the present case are strikingly similar to those *638 presented in Huerstel v. L. Mangano & Co., La.App., 39 So.2d 460, 462, wherein the Court said:
"Even though Mrs. Huerstel did stop at the intersection, she had complied with but one of the duties imposed upon her by the city ordinance. In addition to stopping, the ordinance makes it mandatory for a driver to look and listen, so as to carefully observe traffic conditions. Mrs. Huerstel was unable to see up Dauphine Street because the corner was blind, and under that circumstance it was her duty to have proceeded slowly and cautiously until her automobile had reached a point where there was no interference with her vision. Had this precaution been taken, there is no doubt that Mrs. Huerstel could and would have seen the oncoming truck, and we think that her failure to make certain, before coming out into the intersection, that her path was clear constitutes gross negligence. See Pancoast v. Cooperative Cab. Co., La.App., 37 So.2d 452, and authorities therein cited."
The circumstances of each individual case must be considered to determine whether the party who enters an intersection first should be given such preemption as to amount to a right of way. As was stated in Gayle v. J. Ray McDermott & Co., Inc., La.App., 34 So.2d 631, 633:
"Gayle claims that he had preempted the intersection. It is very evident from the ensuing accident that plaintiff could not have reached the intersection more than two or three seconds before defendant's truck, for if he was traveling at a speed of eight miles per hour, he was moving almost twelve feet per second and thus, in three seconds, he could have completely crossed the intersection. It was during that three seconds that the accident occurred. In Cole v. Sherrill, supra [La. App., 7 So.2d 205], the Court quoted from the opinion rendered by the District Judge, as follows: "Neither do we find that the defendant had preempted this intersection. This conclusion is based on the nature of the intersection which we have heretofore discussed and for the additional reason that plaintiff was on a right of way street and the cars arrived at approximately the same time. Under such circumstances the mere fact that the driver on the disfavored street might have actually entered the intersection slightly ahead of the other does not amount to a preemption which would give him the right of way.'
"What is meant by the preemption of an intersection in such a situation is clearly set forth in Waller v. Rapides Grocery Company, La.App., 22 So.2d 407, 409, in which the Court said, that while it is true, that a driver whose vehicle has actually preempted the intersection may not be negligent in failing to accord the right of way to the other vehicle, this is only true "* * * where such vehicle has preempted the intersection by a sufficient margin of both time and distance as would enable the driver of a vehicle approaching the intersection on a right-of-way thoroughfare to avoid a collision through the exercise of reasonable care.'"
The right of pre-emption is not accorded the driver who blindly enters a favored street, without regard to oncoming traffic, and then attempts to absolve himself of liability because of the mere fact that he was there first. There is nothing in the record which would indicate to this Court that the defendant's assured could have done anything to avoid the accident.
For the reasons hereinabove assigned, there is judgment herein reversing the judgment below and dismissing petitioner's suit; all costs of this appeal to be paid by petitioner.
Judgment reversed.