LOUIS H. YARRUT, Judge ad hoc.
From a judgment dismissing both main and reconventional demands, plaintiffs appeal and defendant-reconvenor answers the appeal. Plaintiffs (brother and sister) seek to recover for personal injuries sustained, by the brother (Masson), and for damage to the automobile of the sister (Mrs. Mal-ter), which the latter had loaned to, and was being driven at the time of the accident, by Masson. Masson had with him, as his guest, his sister’s eleven year old son, on their way to Pontchartrain Beach. The boy suffered no injury.
The accident occurred at 8:00 P.M. in April, 1955, at the intersection of Canal and So. Bernadotte Streets in New Orleans.
Masson was driving north on So. Berna-dotte Street, and defendant east, or towards the River on Canal. Canal is a two-way main thoroughfare, running east and west, divided by a wide neutral ground traversed by double street-car tracks. So. Bernadotte is a one-way street, runs north and south,, and is controlled by a “Stop” sign as it enters Canal. The night was clear and dry and thé intersection well-lighted.
Each roadway of Canal is 30 feet wide, ¡ and So. Bernadotte is 30 feet wide. .
The automobiles collided in the intersection, a few feet short of the neutral ground.
Other than the respective drivers of the colliding cars, the only witness to appear was a member of the local Bar (Fox) who appeared for plaintiffs.
Masson testified that he stopped at the “Stop” sign and saw cars approaching from his left at the next corner, 300 feet away. He then proceeded into the intersection at six miles per hour and when he was two or three feet from the neutral ground, waS" struck by defendant’s car. Except for seeing cars 300 feet away when he entered the intersection, he did not see defendant’s car until it hit him.
Defendant testified that he was in the neutral ground lane, travelling about 25 miles per hour with other cars to his right travelling along with him; when 15 feet from the intersection he saw Masson’s car crossing in the middle. Realizing a crash was imminent, he swerved a few feet to his right to avoid it, but failed, resulting in his front striking Masson’s left rear bumpr *230 er; that Masson stopped short of the neutral ground, apparently for a passing street car, which Masson denied, contending that once he entered the intersection, he continued on.
The disinterested witness (Fox) testified he was having his car serviced at an oil station at the intersection, just SO feet away from the collision; that he was acquainted with- Masson, a- night elevator tender at the building where Fox has his law office; that he saw defendant’s car for the first time when it was SO feet from So. Berna-dotte, travelling in excess of 35 miles per hour, when ' Masson’s car was only three or four feet from the neutral ground; that Masson had stopped at Canal before entering the intersection, and continued on without stopping when struck; that defendant did not slacken speed; that he heard no brakes grinding and no horn blown; that his name does not appear on the police report as a witness to the accident because he left before the police arrived, but spoke to Masson at the scene; that after the accident, Masson’s car came to rest on Canal, six feet from the neutral ground and 15 feet from So. Bernadotte, while defendant’s car came to rest on Canal 150 feet from point of impact.
Taking Masson’s and Fox’ versions at face value, we must conclude that, as Mas-son stopped at the intersection and then proceeded to cross at five to six miles per hour without stopping, and Masson’s car was four feet, more or less, from the neutral ground, Masson’s car travelled about 20 feet at five to six miles, while defendant’s car was travelling 300 feet, or 15 times further. For the two cars to meet, defendant would have had to travel 75 miles per hour, yet Fox said he was travelling about 35 miles.
If Masson is correct and defendant was travelling in excess of 75 miles per hour, the accident would not have happened, because defendant would have cleared the intersection, or both cars would have been completely demolished. If, as Fox testified, defendant was travelling only 35 miles per hour, more or less, then Masson would have cleared the intersection without mishap.
As we see it from the evidence, the accident happened in the following manner: When Masson saw the cars at the next corner as he stopped at the “Stop” sign, he waited for them to pass. He could only see the cars on defendant’s right because defendant’s car, approaching in the neutral ground lane, was screened from Masson’s view. As the cars on defendant’s right passed the intersection, Masson proceeded to cross, when defendant’s car, 50 feet, more or less, away came into his view. Realizing an accident was imminent and, in an effort to avoid it, defendant swerved a few feet to his right, but to no avail.
Defendant, under these circumstances, cannot be held to have been negligent in any manner. At 35 miles per hour, his speed did not contribute to the accident, and the emergency he sought to avoid was not of his making. Seeing the cars to his right proceeding across the intersection without mishap, he had a perfect right to assume that defendant or any other motorist would wait before attempting to cross until the intersection was clear. Had Masson waited as he should have, he would have seen defendant’s car, once cleared from the screening by the other cars, approaching on the neutral ground lane 50 feet or more away, and too close for him to even attempt a crossing.
Masson’s failure to wait under these circumstances before entering the intersection was gross negligence. Huerstel v. L. Man-gano & Co., La.App., 39 So.2d 460; Pan-coast v. Cooperative Cab Co., La.App., 37 So.2d 452; Gayle v. J. Ray McDermott & Co., La.App., 34 So.2d 631.
Since defendant was not guilty of negligence in any degree, neither plaintiff can recover from him.
In reconvention, defendant seeks recovery for the amount he paid for the repair of the automobile he was driving. While he alleged the automobile was his, at the trial, as the result of a subpoena duces tecum, he admitted the car was owned by one Rezzuto, from whom he borrowed it. Since defendant had no legal liability to pay for the repairs, and did not obtain an *231 assignment or conventional subrogation either from the repairman or Rezutto, he has no right of action to recover for such repairs. He is neither legal nor conventional subrogee. LSA-C.C. arts. 2159 through 2162. See Commentary in 25 T.L.R. 358.
While both counsel stipulated in open Court the correctness of the amount of the respective repair bills there was no admission that each had the right to recover therefor. This is best illustrated by plaintiff’s counsel, both in brief and in oral argument, strenuously contending that Mrs. Malter cannot recover for the repairs to her automobile, since it belonged to the dissolved, though unliquidated, community existing between her and her late husband.
Accordingly, both main and reconven-tional demands were properly rejected by the lower court, and therefore the judgment appealed from is affirmed.
Affirmed.
JANVIER, J., absent.