111 So.2d 885 (1959)
Walter R. EVANS et al., Plaintiffs-Appellants,
v.
Glen M. WALKER, doing business as Standard Auto Parts, et al., Defendants-Appellees.
No. 9012.
Court of Appeal of Louisiana, Second Circuit.
May 4, 1959.
*886 Madison, Madison, Files & Shell, Bastrop, for appellants.
Thos. W. Davenport, Monroe, for appellees.
AYRES, Judge.
Plaintiffs, husband and wife, seek to recover damages for personal injuries sustained by the wife and medical expenses incurred and to be expended by the husband as the result of an automobile collision occurring about 5:00 o'clock p. m. June 30, 1956, at the intersection of Marie Place and Emerson Avenue in the City of Monroe. The plaintiff, Mrs. Evans, was a guest passenger in a Chevrolet automobile driven and operated by Mrs. H. G. Prophit, Jr., which was struck on the right side by a Plymouth automobile driven and operated at the time by the defendant, Glen M. Walker. Made defendants are Walker and his public liability insurer, Indiana Lumbermen's Mutual Insurance Company. From an adverse judgment plaintiffs have appealed.
The facts, despite some confusion arising out of inaccuracies of pleadings and errors in preliminary statements of the parties, have been definitely established. Marie Place is a boulevard thoroughfare occupying a general north and south course and consisting of two traffic lanes, each 20 feet in width, separated by a neutral ground 40 feet in width. Each lane is for one-way traffic; northbound traffic occupies the east lane and southbound traffic the west lane.
Mrs. Prophit, immediately prior to the collision, was driving north on Marie Place. On arriving at the intersection with Emerson Avenue, which crosses Marie Place at right angles, after first bringing her car to a stop, Mrs. Prophit turned left and proceeded in a westerly direction in the intersection. She again stopped before entering the southbound or western lane of Marie Place, after which she proceeded into the intersection, where her car was struck by the Plymouth of the defendant, Walker, as he was traveling south on Marie Place. The Plymouth struck the Chevrolet broadside and came to rest facing the direction in which it was traveling, about midway of the intersection of the west lane of Marie Place and Emerson Avenue. The Chevrolet stopped on the southwest corner of the intersection headed in a northwesterly direction.
Charges and counter-charges of negligence are made against the drivers of each of the vehicles. Negligence charged to Walker consists of excessive speed, failure to keep a proper lookout or to apply his brakes or to make any other effort to avoid the accident after he saw or should have seen Mrs. Prophit's car. Alleging that in driving at an excessive rate of speed, violating the primary right of way of Marie Place and in failing to maintain a proper lookout, Mrs. Prophit was charged by defendants with negligence constituting the sole proximate cause of the accident. Additionally, in the alternative, contributory negligence was charged to Mrs. Evans in not maintaining a proper lookout and in not protesting and warning the driver of her excessive speed and disregard of the superior right of way of traffic on Marie *887 Place and the signs indicative thereof, as well as her failure to observe the approach of the Walker car and warn Mrs. Prophit thereof.
During the course of the trial, based upon facts established therein, defendants filed an exception of no cause and of no right of action, predicated upon the fact that plaintiffs, in consideration of the payment to them of the sum of $1,500, plus accrued medical expenses, had fully released Mr. and Mrs. Prophit and their insurer from all claims arising out of the aforesaid accident without reservation of any rights as against these defendants.
The fact of negligence and the question of whose negligence constitutes a proximate cause of the accident are issues of fact. There is a "Yield Right Of Way" sign on Emerson Avenue immediately east of its intersection with Marie Place. Both Mrs. Prophit and Mrs. Evans were familiar with this sign. Their testimony is that Mrs. Prophit brought her car to a stop on two occasions, as heretofore stated, (1) before entering and turning left on Emerson Avenue and (2) before entering and attempting to cross the west lane of Marie Place. Both also testified that each of them made careful observation to the north, the only direction from which traffic could have been anticipated to approach in a one-way traffic lane. Nevertheless, they did not see the Walker car. Walker entered Marie Place at its "T" intersection with Park Avenue, only one block, but a distance of 363 feet, from the intersection of Marie Place and Emerson Avenue. The evidence further establishes that a clear and unobstructed view exists for the aforesaid entire distance along Marie Place between Emerson Avenue and Park Avenue.
Walker testified that he turned south on Marie Place off Park Avenue; that he saw the Prophit car on Emerson Avenue as it moved across the space in line with the neutral ground or boulevard of Marie Place; that Mrs. Prophit failed to stop but entered the intersection immediately in front of his vehicle, whereupon he applied his brakes but was unable to avoid the collision. The physical facts of the accident and of the impact support Walker's version of the accident and attest to the fact he was traveling at a moderate rate of speed.
More specifically, Mrs. Evans' version of the accident is given in her testimony, wherein she stated:
"A. Mrs. Prophit and I were proceeding north on the Marie Place boulevard. We came to the Emerson intersection, we stopped and Mrs. Prophit looked ahead, then we turned left and we came to a complete stop again and we both looked to the right and we proceeded to cross EmersonI mean Marie Place on Emerson and we must have been one-half (1/2) or three-quarters (¾) across that lane and Mrs. Prophit looked to the right and she said `he is going to hit us' and I looked out the window and at thatthe headlights were right in the car and at us. He struck us with great force right in the middle of the car and knocked us up on the west-south-west corner of the Emerson and Marie Place intersection."
Mrs. Prophit's version corroborates the testimony of Mrs. Evans. She gave this testimony:
"Q. So you would think that you were three-quarters (¾) of the way across at the time of the actual impact? A. I would say that. I'm not real sure that that would be the term of it and all but that is my impression of it and I think that right.
"Q. Now at what position there in the street were you when you said to Mrs. Evans `he is going to hit us'? A. Just at the minute it hit, I just got it out of my mouth and bam, there it was.
"Q. In other words your words and the impact itself were more or less instantaneous? A. Yes, very few seconds if any.

*888 "Q. And I believe you said that the first time you saw the Walker car its headlights were practically against the right side of your car? A. Well I didn'tI mean I was just looking forward like that and I knew a car was coming. Of course I didn't know if it was a man or a woman or what kind of car or anything else. I said `oh goodness, we are going to be hit' and we were.
"Q. In other words you simply caught it out of the right side of your eye? In other wordsA.That's right.
"Q.You were looking there directly to the west and you just caught that flash as we do out of the side of our eye that something was coming up on your right? A. That's right.
"Q. There wasn't even time to turn your head and to see what was coming up on your right? A. No.
"Q. And that was the moment when you said quickly `he is going to hit us'? A. To that effect or `somebody is going to hit us' or whatever because I didn't even know whether it was a man or woman or what kind of car.
* * * * * *
"Q. So that you know you were dead stopped here for a sufficient length of time to take a good view back to your right or to the north? A. Yes.
"Q. And there was absolutely nothing there and you could see that entire block up to the Milner house on Park Avenue? A. Well I could see as far asyes, I could.
"Q. And at the time that you made that stop, you then started forward but you had your eyes to the west because you were moving west on Emerson Street? A. That's right.
"Q. So that your direct vision never caught the Walker car, you simply caught it out of your eye as we do while driving? A. That's right.
"Q. And there was no time to even turn and look to see what kind of vehicle it was that was coming into you was there? A. It sure was, just like a flash.
"Q. Now can you tell me Mrs. Prophit in your own words how it could be that there was no vehicle within a distance of some three hundred (300) feet or so when your front wheels were almost at the curb of the west half of Marie Place and how you could be struck before you reached three-quarters (¾) of the way across? Do you know the answer to the problem that we have here? A. No, I don't.
"Q. You feel like if the Walker car had been within that three hundred (300) feet or so up to Park Avenue you would have seen it? A. I think so.
"Q. And if you had seen it there would have been no reason on your part to violate right of way and go out in front of it? A. No.
"Q. And if you had seen it, in good safety practice, you would not have moved from a position of safety out into a position of peril would you? A. Certainly not.
"Q. So that the only answer you have is that for some reason you moved into this intersection without knowing you were in the slightest danger? A. That's right.
"Q. And as you moved into it you were completely satisfied with the movement into the street and had no idea that there was any danger of any nature at that point? A. No.
"Q. And if you had known it you would not have moved? A. That is right."
*889 On consideration of the facts as established on the trial of the case, the trial court reached the conclusion that defendant Walker was free from negligence and that Mrs. Prophit was negligent and that her negligence constituted the sole and proximate cause of the accident. The conclusions reached and reasons therefor were stated as follows:
"It appears obvious to the Court that the automobile of Mr. Walker was there or it would not have struck the automobile of Mrs. Prophit, as it only traveled the distance of one-half to three-fourths the way across the west lane of Marie Place. The law holds us to see those things that we should see and it appears to the Court that both Mrs. Evans and Mrs. Prophit could have seen and should have seen the automobile of Mr. Walker.
"In the case of Chase v. Burley, La. App., 76 So.2d 587, the Court stated:
"`We take this occasion to point out the fact that there seems to be a somewhat prevalent idea among automobile drivers to the effect that when one has brought a vehicle to a stop, as required by law, before entering an intersection with a favored street he has fulfilled the requirements of the law. This is but a part, indeed the least effective part, of a motorist's duty. The very purpose of stopping is to permit the opportunity for a full and complete observation in both directions along the favored street in order to ascertain the presence of approaching traffic which might interfere with free and safe passage across such favored highway. In the fulfillment of this duty Mrs. Ethel Chase completely failed and it follows that this negligence was a proximate and effective cause of the collision.'
"In the case of Gautreaux v. Southern Farm Bureau Casualty Company, La.App., 83 So.2d 667, the Court stated:
"`In the present instance, Mrs. Barrow's negligence was undoubtedly a proximate cause of the accident when she entered the intersection when (as found the District Court) the Gautreaux vehicle was so close to the intersection, whether she stopped at the stopsign or not.'
"In the present case Mr. Walker testified that he was driving 25 miles per hour. This testimony is not contradicted. When Mrs. Prophit stopped at the boulevard, she could have seen Mr. Walker approaching. There was a duty on her part to remain at the boulevard until danger had passed. Her failure to do this was the proximate cause of the accident, therefore, the demands of the plaintiffs should be rejected at their costs."
See Rachow v. Ringwald, La.App., 87 So. 2d 173.
And, we might add that Mrs. Evans was no more observant of the situation as to traffic conditions or of the approach of defendant's car than was Mrs. Prophit.
According to the testimony of both Mrs. Prophit and Mrs. Evans, after looking to the right, they made no further observation and were not aware of the presence of the approaching automobile until momentarily before the actual impact of the collision. As was observed in Gerrets v. Reed, La. App., 99 So.2d 408, 410, we think this admission is in itself sufficient to establish negligence on the part of Mrs. Prophit as constituting a proximate cause of the accident. There we stated:
"A driver who enters and continues to traverse an intersection without making an effort to observe what could and should be seen, is guilty of actionable negligence. In other words, there is a continuing duty to exercise care and caution. Particularly is this true where the motorist is crossing a favored or right-of-way thoroughfare. Huerstel v. L. Mangano & Co., La.App., 39 So. 2d 460; Broughton v. Touchstone, La. App., 72 So.2d 552; Sonnier v. U. S. *890 Fidelity & Guaranty Co., La.App., 79 So.2d 635. In Chase v. Burley, La. App., 76 So.2d 587, our opinion attempted to emphasize the fact that the purpose of stopping at a stop sign is to permit the opportunity for a full and complete observation in both directions along the favored street. It is hardly necessary to set forth in words the quite obvious corollary that the act of making such observation must be continued in order to establish the assurance of safe passage across the favored highway."
Nor do we find any merit in plaintiffs' obvious contention that the Prophit automobile pre-empted the intersection. Prior entry of an intersection, without a reasonable expectation and opportunity of negotiating the intersection in safety and without obstructing the normal movement of traffic therein does not constitute a pre-emption of the intersection. Broughton v. Touchstone, La.App., 72 So. 2d 552; Harris v. Travelers Indemnity Co., of Hartford, Conn., La.App., 70 So.2d 235; Aucoin v. Houston Fire & Casualty Co., La.App., 44 So.2d 127; Butler v. O'Neal, La.App., 26 So.2d 753.
Nor has there been any showing of negligence on the part of Walker constituting either a direct or contributing cause of the accident. He was operating his automobile on a right of way street at a reasonable and moderate rate of speed. In such instances it has been held that in gauging the fault which may be attributable to a motorist who was operating his vehicle in obedience to positive law one should be convinced that the dereliction was most substantial and that, without it, the accident would not have occurred. Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So. 2d 292; Wood v. Manufacturers Casualty Ins. Co., La.App., 107 So.2d 309; Henderson et ux. v. Central Mutual Ins. Co. et al., La.App., 111 So.2d 351.
We find no dereliction of duty or fault attributable to Walker and thus conclude, as did the trial court, that he was free of negligence.
While we have predicated the affirmance of the judgment upon the proposition that plaintiffs have failed to establish by a preponderance of evidence fault or negligence on the part of defendant Walker constituting either a proximate or a contributing cause of the accident, we could have with equal confidence in the correctness of the judgment sustained the exception of no cause or right of action, the basis of which has already been stated. LSA-C.C. art. 2203 provides, in part:
"The remission or conventional discharge in favor of one of the codebtors in solido, discharges all the others, unless the creditor has expressly reserved his right against the latter."
The general rule is, as stated in this Article, that the remission or conventional discharge in favor of one of the co-debtors in solido discharges all the others unless the creditor has expressly reserved his right against the latter. The rule applies to obligations ex delicto as well as obligations ex contractu. Reid v. Lowden 192 La. 811, 189 So. 286; Guarisco v. Pennsylvania Casualty Co., 209 La. 435, 24 So.2d 678; Lewis v. Travelers Indemnity Co., La.App., 81 So.2d 178.
In the instant case, the evidence establishes that Mrs. Prophit was a tortfeasor whose negligence constituted a proximate cause of the accident in which plaintiffs sustained injuries and damages. Hence, it is clear, by the execution of the aforesaid release, plaintiffs have released and discharged all others, particularly defendants, from whom they here seek to recover damages resulting from or arising out of the same accident.
Nevertheless, for the reasons hereinabove assigned, the judgment appealed should be, and it is hereby, affirmed at appellants' cost.
Affirmed.