JOHNSON, Judge.
Defendant appeals from a judgment awarding plaintiff $3,750.00 damages for *256 personal injuries suffered on June 7, 1960, when plaintiff’s three-wheel police motorcycle collided with the left side of defendant’s automobile at the intersection of Burgundy and Orleans Streets in New Orleans.
At the time of the accident plaintiff was a policeman, and he was on duty as a patrolman. His job was to patrol Burgundy and Dauphine Streets to prevent improper parking and the obstruction of traffic signs. Plaintiff was riding his motorcycle, going downtown on Burgundy Street, approaching Orleans Street, which crosses Burgundy at right angles. Burgundy is a one-way street for traffic going downtown and Orleans is a one-way street for traffic going toward the lake. Defendant was driving his automobile at slow speed toward the lake on Orleans Street, traffic on which is regulated by a “stop” sign, thus giving traffic on Burgundy the right-of-way. There are buildings up to the sidewalk at all four corners of the intersection.
Plaintiff testified that, when he was about 40 feet from Orleans, he could see defendant’s automobile approaching on Orleans and assumed that defendant would stop in obedience to the stop sign. When plaintiff realized that defendant’s car was entering the intersection without stopping, he immediately applied his brakes and skidded 16 feet into the left side of defendant’s car.
To the contrary, defendant claims that he stopped at the “stop” sign on Orleans, observed plaintiff’s motorcycle more than half a block up Burgundy, and proceeded to cross Burgundy. When he entered the intersection he discovered that plaintiff’s motorcycle was travelling so fast that he could hardly believe his eyes; that, in this dilemma, he put on his emergency brake, without avail; that the motorcycle struck the left rear fender of his car, which kept rolling as defendant jumped out to see if plaintiff was hurt. Defendant’s guest passenger, on the front seat, had to apply the brake to stop the car.
Four witnesses testified in addition to the parties. Defendant and his guest passenger, Bill Devoe, lived at the same address. Both were female impersonators at the “My-O-My Club.” Devoe testified that defendant stopped at the stop sign before entering the intersection. They both knew a girl named Von Ray, who was a “stripper” at a Bourbon Street establishment. She testified that she was standing at the downtown river corner of Burgundy and Orleans; that when she first saw defendant’s automobile it was stopped before entering the intersection; that she spoke to defendant and Devoe, whom she knew; that as the automobile moved into the intersection she saw the motorcycle approach extra, extra fast and collide with the back end of the automobile.
Clarabelle Singleton, for plaintiff, testified that she was sitting on her doorsteps at the uptown lake corner of the intersection, where she lived; that she saw the automobile on Orleans travelling very fast and enter the intersection without stopping. She said the accident happened about 12:00 or 1:00 o’clock that day. The other witnesses fixed the time of the accident at 3:00 to 4:00 p. m
Defendant’s counsel criticizes the testimony of the witness Clarabelle. It is true that her testimony does not leave the impression that she was an educated person, but the testimony of defendant’s witness, Von Ray, is no better. Von Ray did not know the name of the street on which she lived, could not tell what day or date it was, and said the photographs of the intersection looked like Canal Street, creating grave doubt that she was present when the accident happened.
Plaintiff’s witness -Hinkle, a fellow police officer, visited the scene after the accident, examined defendant’s car, and testified that the motorcycle struck the left side of the automobile at the door and left front fender.
 Our impression is that defendant entered the intersection without stopping. Whether defendant stopped or did not stop *257 is not important and makes no material difference. The evidence is clear, and the trial judge must have reached the same conclusion, that defendant entered the intersection in front of plaintiff’s vehicle at a time when defendant could have had no reasonable hope of crossing in safety without interfering with plaintiff on the right-of-way street. The defendant testified that the motorcycle was travelling very fast. We neither believe plaintiff was travelling fast, nor was more than half a block from the intersection when defendant entered. The plaintiff saw defendant’s car approaching Burgundy Street and had the right to rely upon defendant’s duty to yield the right-of-way. Plaintiff was justified in continuing on his way until he could reasonably conclude that defendant would enter the intersection without yielding plaintiff the right-of-way. As soon as plaintiff made that determination he did everything possible to avoid the collision. Hence plaintiff cannot be charged with negligence.
When reaching a right-of-way thoroughfare, a motorist must determine that it is safe to enter and cross without interfering with traffic on the right-of-way road or street. His failure to do so constitutes gross negligence. Observance of another vehicle on the right-of-way street is not enough. He must first be sure that the intersection will remain open for him until his crossing is completed. Our Louisiana courts have established that rule as axiomatic. The motorist who stops and looks has performed only half the duty imposed upon him. The other half is to determine the condition of traffic on the right-of-way street and to refrain from entering it, if to do so would impede traffic on that street. A few of the cases on this subject are as follows:
Emmco Insurance Company v. Carambat, La.App., 145 So.2d 83; Mentel v. Boston Insurance Co., La.App., 144 So.2d 441; Wise v. Prescott, La.App., 142 So.2d 613; Steele v. State Farm Mutual Insurance Company, 235 La. 564, 105 So.2d 222; Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339; Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849; Evans v. Walker, La.App., 111 So.2d 885; Gerrets v. Reed, La.App., 99 So.2d 408; Huerstel v. L. Mangano & Co., La.App., 39 So.2d 460; Broughton v. Touchstone, La.App., 72 So.2d 552; Sonnier v. United States Fidelity & Guaranty Co., La.App., 79 So.2d 635; Chase v. Burley, La.App., 76 So.2d 587; Harris v. Travelers Indemnity Co. of Hartford, Conn., La.App., 70 So.2d 235; Aucoin v. Houston Fire & Casualty Co., La.App., 44 So.2d 127; Butler v. O’Neal, La.App., 26 So.2d 753; Stevens v. Delanoix, La.App., 96 So.2d 844, and many other decisions cited in this Stevens opinion.
Plaintiff said that when they were putting him in the ambulance he could tell his back was hurt. He was first taken to Charity Hospital where a considerable wound on his scalp was dressed and sutured. He -was then removed to Touro Infirmary, where he remained until June 16, 1960. Dr. Gernon Brown, an orthopedist, attended plaintiff in Touro until June 16th, after which Dr. Brown treated him until September 8, 1960. Plaintiff was then discharged and went back to work.
In addition to the scalp wound, plaintiff suffered fractures of the transverse process of the 2nd, 3rd, 4th lumbar vertebrae on the right side. Upon his return to work he was transferred from the motorcycle to foot patrol because it was easier. For a time, at intervals, he said he would be compelled to sit down and rest his aching back. He lost three months from work and at the time of the trial on March 22, 1962, he still suffered discomfort in certain positions and on change of weather. He said he was uncomfortable in the witness chair. His testimony appears to be truthful and reasonable in describing his ailments and disability.
Plaintiff explained that he had been suffering from diabetes for about six years prior to the accident. After the accident this condition was worsened for quite some *258 time. Larger doses of insulin up to the time of the trial kept the disease under control. Dr. John McNulty, an internist, testified that when he saw plaintiff on the day of the accident, his diabetic condition was out of control, and it took some time to get the condition back into such state that he could be followed as an out-patient. This doctor explained that trauma will often throw a diabetic condition out of control and a person’s insulin deficiency must be supplied in frequent, increased amounts. Dr. McNulty treated plaintiff for four and a half months after the accident. Plaintiff testified that he still had to take increased doses of insulin to regulate his condition.
From a careful study of this record, we are unable to find any manifest error in the judgment of the trial court, either on the facts or the quantum.
The judgment appealed from is affirmed with costs to be paid by the defendant.
Affirmed.