YARRUT, Judge.
This is a suit for property damage resulting from an intersectional collision at Vermillion Blvd. and Burbank Drive in New Orleans, on August 5, 1956, about 6:30 o’clock p. m., between the automobile of plaintiff, driven by her 19-year old son, and the automobile of defendant’s insured, Mrs. Lezina, driven by her. Mrs. Lezina was not joined as a defendant, her liability insurer being the sole defendant under the direct-action statute.
Vermillion Blvd. has two paved roadways, separated by a wide neutral ground, and runs from Lake Pontchartrain towards the Mississippi River. Burbank Drive intersects Vermillion, is paved with one roadway, but two lanes for two-way traffic. The New Orleans City Code, offered by both parties, makes Vermillion the favored street, with a speed limit of. 35 miles, and Burbank the unfavored street with a speed limit of 20 miles.
Plaintiff’s son, accompanied by a friend, was driving on Vermillion towards the River. Mrs. Lezina was travelling on Burbank, approaching Vermillion from young Levy’s right. The two automobiles collided in the intersection, at a point where the neutral ground lane of Vermillion meets the lakeside lane of Burbank. To avoid the impact the Levy car swerved to the left, the right front fender of the Levy car striking the left front fender of the Lezina car.
Each party, by proper pleading, charges the other with negligence in driving excessively, not having the car under control and not keeping a proper lookout. There was judgment for plaintiff for $769.23 property damage only, and defendant has appealed.
The drivers of both automobiles had guests who testified and each generally corroborated the host. The only other eyewitness was a man who lives at the intersection of the two streets, who testified for defendant.
Mrs. Lezina’s testimony under cross-examination, clearly fixes her negligence in entering the intersection as follows:
“ * * * Q. When did you first see the Levy automobile ? A. I didn’t see the automobile at all; all I saw was the color of the automobile.
******
“Q. How fast were you going as you entered the intersection of Vermillion Boulevard and Burbank Street? A. I would say between 20 and 25 miles; I was slowing down for the corner.
******
“Q. Why were you slowing down? A. So I could look up and down the street.
“Q. And did you look up and down the street? A. Yes, I did.
“Q. And what did you see? A. I didn’t see Mr. Levy’s car. * * *. ”
*145 The young lady guest in the Lezina car testified as follows:
“ * * * Q. And when you looked down Vermillion approximately where was your automobile in relation to Vermillion Boulevard, were you just about to enter Vermillion Boulevard or had you already entered? A. Just about ready to enter; we entered enough where we could see what was down the block.
“Q. And you didn’t see anything? A. No, sir.
“Q. Did you ever see the Levy automobile before it struck your car? A. No, sir. * * * ”
 It is clear Mrs. Lezina and her guest were not looking. Had they been looking one or the other would have seen the approaching Levy car. To look and not to see what can be seen is the same as not looking. For entering the favored street without looking, Mrs. Lezina was clearly guilty of negligence.
The remaining question is whether the Levy car was guilty of. any negligence that contributed to the collision.
Both young Levy and his guest, a young 19-year old college student, testified that Levy was approaching Burbank about 30 miles an hour and when within 20 feet slowed down to 20 or 25. That within 15 feet from Burbank, they saw Mrs. Lezina on Burbank about 15 or 20 feet away. When young Levy realized the Lezina car was not going to stop for the intersection, he immediately applied his brakes and swerved to the left to avoid the collision, without avail.
The only disinterested witness, a man living at 6002 Vermillion, corner Burbank, testified for defendant. He saw the Levy car 150 feet from the corner and heard the roar of its motor travelling about 50 miles an hour. He saw the Lezina car on Burbank travelling about 25 miles and 75 feet from the corner. He did not see the Le-zina car stop at the intersection, because he wasn’t looking; but followed the Levy car which did not slow down until it crashed in the intersection.
Since this witness saw the Levy car 150' feet away with its motor roaring and was afraid something might happen, and saw the Lezina car 75 feet from the intersection, it seems strange he was following the Levy car to the intersection expecting something to happen, certainly to the approaching Lezina car, and yet did not see the Lezina car as it entered the intersection, without stopping.
This witness’s own estimate of the distance from the intersection and the speed of the respective cars approaching it — 150-feet at 50 miles for the Levy car — and 75 feet at 25 miles for the Lezina car — mathematically indicates that both should arrive at the intersection at the same time.
This witness further suggested Levy and his companion were “skylarking” because they had a towel on the side of the mirror and looked like they were coming back from bathing, had on trunks but no shirts. Both boys admitted they spent the afternoon at the lakefront with other friends. Levy was on his way home to get his mother, and take her to the First Baptist Church to participate in the church service at 8:00 o’clock p. m. It was suggested that Levy was late and was speeding to get home. The 90 minutes from the time of the accident (6:-30) and the church service (8:00) was ample, and the appointment could easily have been kept except for the intervening accident.
Defendant further sought to prove the two boys had been drinking at the lakefront, which they denied. Defendant’s answer does not charge intoxication, nor did the resident witness, who saw them at the scene, even suggest they had been drinking.
A motorist, before he can successfully rely on preemption, must show that he made entry into the intersection at prop *146 er speed and sufficiently in advance of the car on the intersecting road to permit him to proceed on his way without requiring an emergency stop by the other vehicle. Moore v. Shreveport Transit Co., La.App., 115 So.2d 218; Evans v. Walker, La.App., 111 So.2d 885; Mullins v. Seals, La.App., 103 So.2d 582; Russell v. Bourgeois, La.App., 102 So.2d 92.
An excess of speed that had no causal connection with the accident, is not contributory negligence. Vernaci v. Columbia Casualty Co., La.App., 71 So.2d 417; Weidner v. Globe Indemnity Co., La.App., 98 So.2d 566.
The district judge did not give written reasons for his judgment. However, to render judgment for plaintiff, he had to conclude that the accident was caused solely by the negligence of Mrs. Lezina, in entering the intersection in the face of the oncoming Levy car, without looking, in spite of the Levy car’s right-of-way; and that the Levy car in no manner was guilty of contributory negligence. We see no manifest error in the judgment below, and it is accordingly affirmed.
Affirmed.