128 So.2d 833 (1961)
Andrew HERNANDEZ, Plaintiff and Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant and Appellee.
No. 213.
Court of Appeal of Louisiana, Third Circuit.
April 17, 1961.
*834 Gerard F. Thomas, Jr., Natchitoches, for plaintiff.
Lunn, Irion, Switzer, Trichel & Johnson, by Harry A. Johnson, Jr., Shreveport, for defendant.
Before SAVOY, HOOD and CULPEPPER, JJ.
HOOD, Judge.
This is an action for damages arising out of an intersectional collision which occurred in the City of Natchitoches between an automobile, owned and being driven by plaintiff, and a pickup truck insured by defendant and being driven by John R. Calloway, Jr. Defendant filed an answer denying negligence on the part of the driver of the insured vehicle, and, in the alternative, pleading contributory negligence on the part of plaintiff. The trial judge found that plaintiff was barred from recovery by contributory negligence, and accordingly judgment was rendered in favor of defendant, rejecting plaintiff's demands. Plaintiff has appealed from that judgment.
The accident occurred about 5:30 p.m. on January 9, 1960, at the intersection of Second Street and Trudeau Street in the City of Natchitoches. Second Street, one of the principal thoroughfares in the City of Natchitoches, is 44 feet wide at this intersection, and Trudeau Street is a one-way street, about 30 feet in width. Both of these streets are paved with concrete, and at the time of the accident it was raining and the streets were wet. Also, at that time it was dusk, and the headlights of both vehicles were burning. Just prior to the collision plaintiff was driving his automobile in a northerly direction along Second Street, and the pickup truck was being driven by Calloway in a westerly direction on Trudeau Street. A church located on the southeast corner of this intersection obstructed the vision of both drivers, so that neither was able to see the other until they reached points fairly close to the intersection.
An ordinance of the City of Natchitoches provides that traffic on Second Street has the right-of-way at that intersection, and vehicles on Trudeau Street are required to come to a full stop at a point not more than five feet from Second Street and not proceed into the intersection until the driver has ascertained that it is safe to do so. A stop sign was located at this intersection warning drivers of vehicles on Trudeau Street to stop before proceeding to cross Second Street.
The evidence establishes that Calloway stopped at this intersection, and that he then proceeded to drive his truck into Second Street, his purpose being to turn to his left and to travel in a southerly direction on the favored street. While he was in the intersection the left rear portion of the truck was struck by the left front part of the Hernandez car, the point of impact being in the southeast quandrant of the intersection. The evidence shows that the front of the insured truck had crossed the center line of Second Street, and that plaintiff's car had traveled a distance of between 12 and 15 feet into the intersection before the collision occurred.
The truck was being driven at a speed of from eight to ten miles per hour while in *835 the intersection and before the collision occurred, and the Hernandez automobile was being driven at a speed of from fifteen to twenty-five miles per hour when plaintiff first observed the truck entering the intersection. The brakes on plaintiff's automobile were applied just prior to the collision, causing that car to skid a distance of from 18 to 20 feet before the accident occurred. The vehicles apparently struck each other with very little force, since plaintiff's car sustained only minor damage and since each vehicle came to rest in an upright position a few feet from the point of impact.
Calloway testified that when he reached the intersection, he saw some cars approaching from his left on Second Street, that he stopped and waited until two of these cars had passed, that he saw a third car (apparently the Hernandez automobile) approaching from the same direction about one block away, that he then looked to his right and proceeded to enter Second Street. He testified that while he was in the intersection, the young lady who was in the truck with him shouted a warning, that he then looked up and saw plaintiff's car approaching, that he "froze," and that the truck then stalled and was struck. It is apparent from his testimony that although he saw plaintiff's vehicle prior to the time he entered the intersection, he did not observe it any more after that time until immediately before the collision occurred.
Plaintiff testified that he did not see Calloway stop at the intersection, that the truck entered Second Street about 30 feet in front of him, and that he immediately applied his brakes and turned to his right, but was unable to avoid a collision.
Defendant contends that the driver of the insured truck pre-empted the intersection, giving him the right-of-way over vehicles approaching at right angles on Second Street, and accordingly that the sole proximate cause of the accident was the negligence of plaintiff in failing to yield this right-of-way to the truck. The evidence shows that the insured truck did enter the intersection immediately before plaintiff's automobile reached it.
The jurisprudence of this State has been established to the effect that the prior entry of an intersection, without a reasonable expectation and opportunity of negotiating the intersection in safety and without obstructing the normal movement of traffic therein, does not constitute a pre-emption of the intersection. Also, before a motorist can successfully rely on pre-emption, he must show that he made entry into the intersection at a proper speed and sufficiently in advance of the car on the intersecting street to permit him to proceed on his way without requiring an emergency stop by the other vehicle. Montalbano v. Hall, La.App. 2 Cir., 108 So.2d 16; Evans v. Walker, La.App. 2 Cir., 111 So.2d 885; Levy v. St. Paul-Mercury Indemnity Co., La.App. 4 Cir., 124 So.2d 143; Dennison v. Southwestern Fire and Casualty Co., La. App. 1 Cir., 124 So.2d 421; Lavigne v. Southern Farm Bureau Casualty Ins. Co., La.App. 3 Cir., 125 So.2d 430; Saloom v. Guidry, La.App. 3 Cir., 125 So.2d 434; Roeling v. Fidelity-Phenix Fire Ins. Co. of N.Y., La.App. 4 Cir., 125 So.2d 661; Gallioto v. Chisholm, La.App. 4 Cir., 126 So.2d 63.
It further is settled that a motorist who merely stops before entering a right-of-way thoroughfare has performed only one-half of the duty resting on him. He not only must stop, but he must also look out for vehicles on the intersecting street, and he must not enter until he ascertains that it is safe to do so. To stop and then proceed forward into the favored street without first determining that it is safe to enter the intersection constitutes negligence. Arline v. Alexander, La.App. 2 Cir., 2 So.2d 710; Glen Falls Ins. Co. v. Copeland, La. App. 2 Cir., 28 So.2d 145; Pancoast v. Co-operative Cab Co., La.App.Orleans, 37 So. 2d 452; Porter, for and on Behalf of Porter v. DeBoisblanc, La.App.Orleans, 64 So.2d 864; Anderson v. Morgan City Canning *836 Co., Inc., La.App.Orleans, 73 So.2d 196; Chase v. Burley, La.App. 2 Cir., 76 So.2d 587; Lavigne v. Southern Farm Bureau Casualty Ins. Co., supra; Livaccari v. United Jewish Appeal, Inc., La.App. 4 Cir., 126 So.2d 67.
The evidence in this case convinces us that Calloway, the driver of the insured truck, entered the intersection directly in front of plaintiff's approaching vehicle in such a manner as to make it impossible for plaintiff to avoid a collision. Considering the speed at which the vehicles were being driven, the distance the truck traveled into the intersection, and the length of the skid marks left by plaintiff's vehicle, it appears to us that the truck entered the intersection only a few feet before the automobile reached it. Under those circumstances, defendant's plea of pre-emption has no merit, and we conclude that the driver of the insured truck was negligent in attempting to cross the favored street when it was not safe for him to do so. Calloway's negligence in that respect constitutes a proximate cause of the accident.
Defendant contends, however, that plaintiff is barred from recovery by his own contributor negligence in approaching the intersection at an excessive rate of speed and in failing to maintain a proper lookout.
As we have already stated, the evidence establishes that plaintiff was driving his car at a speed of from 15 to 25 miles per hour as it approached the intersection. This was a lawful rate of speed. Plaintiff was traveling on a right-of-way thoroughfare and was aware of the existence of a stop sign warning vehicles entering the intersection from Trudeau Street to stop before doing so. Under those circumstances, he was justified in assuming that drivers on the inferior street would obey the law, and, accordingly, he had the right to proceed at a lawful rate of speed without stopping or reducing his speed at each intersection, unless he saw, or should have seen, that the other car was not observing or was not going to observe the law. Steele, for Use and Benefit of Steele v. State Farm Mutual Insurance Co., 235 La. 564, 105 So.2d 222; Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849; Henderson v. Central Mutual Insurance Co., 238 La. 250, 115 So.2d 339; Dennison v. Southwestern Fire and Casualty Company, supra. We conclude, therefore, that plaintiff was not negligent in driving at an excessive rate of speed as he approached the intersection.
The trial judge held, however, that plaintiff was barred from recovery by contributory negligence in that he failed to maintain a proper lookout as he approached the intersection. In his written reasons for judgment, the trial judge said:
"It is hard to believe that plaintiff could have watched from the first time it was physically possible for him to see it (the insured truck) roll slowly more than 22 feet and may be as much as 35 feet out at right angles in front of him at the speed he claims he was going and not completely miss him."
We are aware of the well established rule to the effect that the conclusion of the trial judge on an issue of fact will not be set aside unless manifestly erroneous. In this case, however, we feel that a manifest error was committed by the trial court in concluding that plaintiff was negligent in failing to maintain a proper lookout prior to and at the time this accident occurred.
Plaintiff testified that he saw the pickup truck before it reached the intersection and as it entered Second Street, and that he applied his brakes and turned to his right as soon as he saw that the driver of the truck was not going to stop. His testimony to that effect is confirmed by City Patrolman Honeycutt, one of the officers who investigated the accident within a few minutes after it occurred, who testified that plaintiff told him that "he saw Mr. Calloway pulling out, and he throwed his brakes on, and his car skidded and he couldn't *837 stop it to keep from avoiding the accident." The physical facts also seem to us to support plaintiff's testimony. After considering the speed at which both vehicles were traveling, the distance the truck traveled after entering the intersection, the fact that some period of time was required for plaintiff to react after the danger became apparent, and the fact that plaintiff's automobile skidded 18 to 20 feet after the brakes were applied, we are convinced that plaintiff was maintaining a proper lookout and that he saw the truck as it entered the intersection.
The trial judge apparently attached some significance to the testimony of City Patrolman Ross Desadier, the other investigating officer, to the effect that shortly after the accident occurred plaintiff told him that "when he saw it (the pickup truck) it was still in motion and right out in front of him." We note, however, that the same witness testified that plaintiff also told him that "as far as he could tell that the truck had just ran out in front of him, that he didn't think that he had stopped." This officer further stated that he had spoken just a word or two to Hernandez, and that "Officer Honeycutt did all the investigating as far as the talking was concerned." We do not think that any of the statements made to this witness by Hernandez are inconsistent with plaintiff's testimony that he saw the truck as it entered the intersection, and certainly those statements could not serve as a basis for concluding that plaintiff was not maintaining a proper lookout.
After considering all of the evidence, we conclude that plaintiff is not barred from recovery because of contributory negligence, and that he is entitled to recover the damages which he sustained as a result of this accident.
Plaintiff contends that as a result of this accident he sustained a severe sprain and strain of the lumbar region of his back. The evidence establishes, however, that he has had previous injuries which have affected his back and which may account for some of his present symptoms. In 1945, for instance, plaintiff underwent abdominal surgery for a ruptured peptic ulcer, and following that surgery, he developed an infection in the incision which left him with a large ventral or midline abdominal hernia. Because of this ventral hernia, he has no abdominal strength, and he cannot use his abdominal muscles to support his trunk and his body, thus causing a great deal of extra strain to be placed on his back. It has been necessary for him to wear an abdominal support since that time. Also, in 1956 he sustained a serious back injury which he says consisted of a ruptured intervertebral disc, and for that injury he was paid workmen's compensation payments regularly from the date of the accident until January, 1959, on which last mentioned date he entered into a substantial settlement of his compensation claim. In connection with this settlement, plaintiff alleged that he was totally and permanently disabled because of the 1956 back injury. The accident which gave rise to this suit occurred on January 9, 1960.
Plaintiff has been unable to do any manual labor since 1956, but he has assisted his wife in the operation of a small cafe since that time. Plaintiff and his wife testified that during the year which elapsed between the settlement of his compensation claim and the date of this accident, plaintiff's back was improving, but that since the accident he has suffered pain continuously, that he has been unable to assist as much in the cafe or in the home, and that he is unable to rest well at night. The evidence discloses, however, that plaintiff and his wife discontinued operating the cafe about one month after the accident occurred because the building was torn down. They moved from Natchitoches to Shreveport at that time, and apparently they have engaged in no occupation since that date.
The only medical experts who testified at the trial were Dr. Charles E. Cook, a general practitioner who examined plaintiff *838 on the day of the accident and who has treated him periodically since that time, and Dr. Paul M. Davis, Jr., an orthopedic surgeon who examined plaintiff on February 18, 1960, and saw him again briefly two days later. Neither of these doctors had ever examined or treated plaintiff prior to the date of this accident, so they were not familiar with the condition of his back or his symptoms prior to that time.
The evidence, including both the medical and lay testimony, establishes that as a result of the accident plaintiff sustained a strain of the lumbar region of his back, superimposed on a pre-existing back injury and a degenerative arthritic lumbar spine. The injury caused muscle spasm in his low back area, which subsided after a period of ten days or two weeks. He suffered moderate to severe pain for a period of approximately six weeks, but he was fitted with a new back brace on February 20, 1960, replacing the one prescribed for him following the 1956 accident, and since he made no further complaints to the doctor who prescribed this new brace, we assume that it gave him the desired or expected relief. He testified that he has not rested as well at night since the accident, and that it is necessary for him to rest frequently during the day. Plaintiff, of course, had some pain and disability in his back prior to the date of this accident, and it is difficult to determine which of his present complaints are attributable to his original back injury and which are attributable to the accident. Our impression from all of the evidence is that the injuries which plaintiff sustained on January 9, 1960, were of a relatively minor nature, but that because of the weak and unstable condition of his spine prior to the accident, his recovery was protracted. The case was tried less than six months after the accident occurred, and in our opinion, plaintiff has failed to show that by the time of the trial he had any further residual pain or disability attributable to the 1960 accident. We feel that an award of $1,000 would be fair and equitable for the injuries which plaintiff sustained and for the pain and suffering occasioned by those injuries.
Plaintiff incurred medical expenses amounting to the aggregate sum of $205.13, which he is entitled to recover. He has failed to produce any legally acceptable proof of the amount of damages to his automobile, and, accordingly, his demand for that item must be rejected.
For the reasons herein assigned, the judgment of the trial court is reversed, and judgment is hereby rendered in favor of plaintiff, Andrew Hernandez, and against defendant, State Farm Mutual Automobile Insurance Company, for the sum of $1,205.13, with legal interest thereon from date of judicial demand until paid, and for all costs of this suit, including the costs of this appeal.
Reversed and rendered.