130 So.2d 462 (1961)
James Carrol FONTENOT, Plaintiff and Appellant,
v.
LIBERTY MUTUAL INSURANCE COMPANY, Defendant and Appellee.
No. 242.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1961.
*463 Fruge & Foret, by Jack C. Frugé, Ville Platte, for plaintiff-appellant.
Davidson, Meaux, Onebane & Donohoe, by Richard C. Meaux, Lafayette, for defendant-appellee.
Before TATE, HOOD and CULPEPPER, JJ.
HOOD, Judge.
This is an action for damages arising out of an intersectional collision between a car owned and being driven by plaintiff, James Carrol Fontenot, and an automobile owned by Power Rig Drilling Company and being driven by Carol C. Burleson, an employee of that company. The defendant, Liberty Mutual Insurance Company, was the public liability and property damage insurer of the car which was being driven by Burleson. Defendant filed an answer denying negligence on the part of the driver of the insured car, and, in the alternative, pleading contributory negligence on the part of the plaintiff. After trial of the case, the district court concluded that both drivers were negligent, and that plaintiff was barred from recovery by contributory negligence. Judgment accordingly was rendered in favor of defendant, rejecting plaintiff's demands, and plaintiff has appealed from that judgment.
The evidence shows that the accident occurred between midnight and 12:30 A.M. on October 17, 1957, at the intersection of Sixth Street and Pecan Street in the Town of Mamou. Sixth Street, also designated as State Highway 13, is one of the principal thoroughfares which runs through the Town of Mamou. It runs in a north and south direction, and is paved, the paved portion being about 18 feet wide, with shoulders about 5 feet wide on either side of the pavement. Pecan Street is a graveled street running east and west, and it is about 25 feet wide at its intersection with Sixth Street. At the time of the collision the weather was slightly foggy, but the streets were dry. The headlights of both vehicles were burning when the collision occurred. Just prior to the accident, plaintiff was driving his vehicle north on Sixth Street, and Burleson was driving the insured vehicle west on Pecan Street. A building located on the southeast corner of this intersection obstructed the vision of both drivers, so that neither was able to see the other until they reached points fairly close to the intersection. A stop sign is located on the northeast corner of this intersection warning traffic on Pecan Street to stop before proceeding to cross Sixth Street.
*464 The evidence establishes that Burleson was driving at a speed of 20 or 25 miles per hour as he approached the intersection, that he did not stop before proceeding to cross Sixth Street, and that the collision occurred when the car he was driving reached a point about in the center of the intersection. Burleson testified that when he reached Sixth Street he saw the plaintiff's car approaching from the south, but that it appeared to be 200 or 300 feet away, that he thought he had time to cross and to make a left turn on Sixth Street, but that his car stalled when he reached a point about 2 feet beyond the center of the intersection and that it was struck before he could get it started again. Mrs. Harris, a passenger in the Burleson vehicle, testified that as the car in which she was riding neared the intersection, she saw plaintiff's car approaching at a distance of about one-half block from them and that she then warned Burleson that he could not enter the intersection safely, but that he proceeded to do so in spite of her warning. Mrs. Harris further testified that the Burleson car did not come to a stop while in the intersection. The trial court concluded that that car did not stall while in the intersection, and we think the evidence supports such a conclusion.
The evidence further shows that plaintiff was driving his car at a speed of from 40 to 60 miles per hour as he approached the intersection, that he did not see the insured vehicle until the front of it had reached a point about two feet on the paved portion of Sixth Street, and that plaintiff then turned his car to his left in an unsuccessful attempt to avoid an accident. Plaintiff did not apply his brakes, but the speed of his car apparently was reduced considerably by the time the accident occurred, because it appears from the evidence that after the collision plaintiff's car came to rest almost at the point of impact, while the insured car continued to travel in a westerly direction several feet before coming to a stop.
Elvin Bogard, a passenger in plaintiff's car, testified that he saw the insured vehicle as it approached the intersection, that when he noticed that Burleson was not going to obey the stop sign he shouted a warning to plaintiff and that plaintiff instantly swerved his car to the left in an attempt to go around the insured car. Both plaintiff and Bogard testified that they were only 25 or 30 feet from the intersection when the insured car entered it.
The collision occurred about in the center of the intersection, the left front fender and left front door of the Burleson vehicle having been struck by the entire front of plaintiff's car. It is apparent that the insured car had travelled a distance of from 14 to 18 feet into the intersection while plaintiff's car had travelled about 12 or 13 feet into it before the collision occurred. Having found that Burleson was driving at a speed of 20 or 25 miles per hour as he attempted to traverse the intersection, a mathematical calculation reveals that plaintiff could not have been more than 42 feet from the intersection at the time Burleson entered it, even though we assume that plaintiff was driving at a speed of 60 miles per hour and that he maintained that speed to the point of impact.
Defendant contends that the insured vehicle pre-empted the intersection, that accordingly it had the right to proceed across it, and that the sole proximate cause of the accident was plaintiff's negligence in failing to yield the right-of-way to the driver of that vehicle.
The jurisprudence of this State has been established to the effect that the prior entry of an intersection, without a reasonable expectation and opportunity of traversing it in safety and without obstructing the normal movement of traffic therein, does not constitute a pre-emption of the intersection. Also, before a motorist can successfully rely on pre-emption, he must show that he entered the intersection at a proper speed and sufficiently in advance of the car on the intersecting street to permit him to proceed on his way without requiring an *465 emergency stop by the other vehicle. Montalbano v. Hall, La.App. 2 Cir., 108 So.2d 16; Evans v. Walker, La.App. 2 Cir., 111 So.2d 885; Levy v. St. Paul-Mercury Indemnity Co., La.App. 4 Cir., 124 So.2d 143; Dennison v. Southwestern Fire & Casualty Co., La.App. 1 Cir., 124 So.2d 421; Lavigne v. Southern Farm Bureau Casualty Ins. Co., La.App. 3 Cir., 125 So.2d 430; Saloom v. Guidry, La.App. 3 Cir., 125 So.2d 434; Roeling v. Fidelity-Phenix Fire Ins. Co. of N. Y., La.App. 4 Cir., 125 So.2d 661; Hernandez v. State Farm Mutual Automobile Ins. Co., La.App. 3 Cir., 128 So.2d 833; McCoy v. State Farm Mutual Ins. Co., La.App. 3 Cir., 129 So.2d 66.
When confronted with a stop sign erected by municipal authorities, in addition to being legally obligated to bring his vehicle to a complete stop, a motorist is held to the duty of carefully appraising traffic conditions at intersecting streets and of assuring himself that the way is clear for him to make safe passage across the intersection before he enters it. Thomas v. Waller, La.App. 2 Cir., 84 So.2d 301; Gerrets v. Reed, La.App. 2 Cir., 99 So.2d 408; Lavigne v. Southern Farm Bureau Casualty Ins. Co., supra.
In the instant case Burleson admits that he did not bring his car to a halt when he reached the stop sign at the intersection, even though he observed plaintiff's car approaching that intersection on the favored street. It was apparent to his guest passenger that the crossing could not be made safely, and she warned Burleson of that fact before he entered Sixth Street. In view of that warning and the other established facts it appears to us that Burleson, by exercising reasonable care, could and should have observed that he could not traverse the intersection safely at that time. Under those circumstances, we conclude that there was no pre-emption of the intersection by the insured vehicle sufficient to relieve Burleson from negligence. We are convinced, as was the trial judge, that Burleson was negligent in disregarding the stop sign and in attempting to cross the favored street in front of plaintiff's on-coming vehicle.
Defendant contends, and the trial judge held, that plaintiff was barred from recovery by his contributory negligence in operating his automobile at an excessive rate of speed and in failing to maintain a proper lookout. The burden of proving contributory negligence on the part of plaintiff, of course, rests upon the defendant. Hunter v. Mayfield, La.App. 2 Cir., 106 So.2d 330; Service Fire Insurance Co. of New York v. Indiana Lumbermans Mutual Insurance Co., La.App.Orl., 111 So.2d 358; Thibodeaux v. Gore, La.App. 3 Cir., 124 So.2d 336.
The evidence establishes that the accident occurred on the outer edge of the Town of Mamou. The street upon which plaintiff was driving was a state highway, and, as has been stated, was one of the principal thoroughfares through that municipality. Plaintiff and his guest passenger testified that plaintiff's car was travelling at a speed of from 40 to 50 miles per hour as it approached the intersection. Burleson was unable to estimate the speed of plaintiff's car, but his guest passenger, Mrs. Harris, testified that in her opinion plaintiff was travelling at a speed of approximately 60 miles per hour. The fact that plaintiff did not apply his brakes and that his automobile stopped almost at the point of impact convinces us that plaintiff was not driving at the speed estimated by Mrs. Harris. Although no evidence was produced establishing the legal speed limit in the corporate limits of Mamou, plaintiff admitted that he knew that the speed limit was 25 miles per hour.
Excessive speed, although a violation of law, is not necessarily regarded under our jurisprudence as a proximate or contributing cause of every accident. Plaintiff is not to be denied recovery purely upon the basis that he exceeded the speed limit, unless it is established that *466 such speed has a causal connection with the accident. Smith v. Aetna Casualty & Surety Co., La.App. 2 Cir., 128 So.2d 235.
In Marler v. State, La.App. 2 Cir., 78 So.2d 26, 39, the Court said:
"The State further contends that Marler was guilty of both negligence proximately causing the accident and contributory negligence barring recovery herein in that he was traveling at an excessive rate of speed in the corporate limits of the village in violation of a municipal ordinance fixing a speed limit of 25 miles per hour. That Marler was driving at a speed greatly in excess of the aforesaid limit was established beyond question. The violation of a statute or an ordinance, unless such violation constitutes a proximate cause of an accident, is insufficient to prevent recovery of damages sustained therein. * * *
* * * * * *
"* * * Regardless of his speed, the Marler automobile had reached a point where, so far as its driver was concerned, the collision could no longer be avoided. Such speed, if excessive and exceeding the lawful limit, was only a condition and not a proximate cause of the collision." (Emphasis added)
Also, in Cone v. Smith, La.App. 2 Cir., 76 So.2d 46, 49, the following pertinent language was used:
"That Smith drove at a great, excessive and reckless rate of speed, which speed was in excess of fifty-five miles per hour, contrary to law, is subject to the requirements of law above stated and the factor of speed in order to create liability must not only cause the injury but must be a proximate cause of the injury. It is admitted that Smith was traveling at a speed of from eighty-five to ninety miles per hour when he first observed the approaching Robinson vehicle. After weighing every implication of this fact we still must find that the conduct of Robinson was the sole cause of the collision and the speed of the Smith vehicle was not a contributing factor." (Emphasis added)
Under the facts established in the instant suit, we conclude that the speed at which plaintiff's vehicle was being driven immediately prior to and at the time of the accident was not a proximate cause of such accident.
Defendant further contends that plaintiff was guilty of contributory negligence in failing to maintain a proper lookout. Plaintiff admits that he did not see the Burleson vehicle until the front of that vehicle had reached a point approximately two feet on the paved portion of Sixth Street. Since the shoulder was five feet wide, it appears that the Burleson car had traveled a distance of approximately seven feet into the intersection before it was observed by plaintiff. If Burleson was travelling at a speed of 20 miles per hour, it should have required not more than .24 seconds to cover this distance.
Bogard, a passenger in plaintiff's automobile, saw the Burleson car before it reached the intersection, and as soon as he observed that the driver did not intend to stop at the stop sign he shouted a warning to plaintiff. Bogard testified that plaintiff turned to his left and made an attempt to avoid the accident "just as soon as I told him `watch.'" According to the evidence, therefore, it appears that plaintiff reacted and attempted to avoid the accident as soon as he would have been able to do so if he had seen the Burleson vehicle the moment it entered the intersection. It appears to us, therefore, that plaintiff's failure to observe the Burleson car until after it had reached a point seven feet into the intersection was not a proximate or contributing cause of the accident. His negligence in failing to observe the Burleson car, therefore, does not constitute contributory *467 negligence barring plaintiff from recovery.
Since the trial judge concluded that plaintiff was not entitled to recover, he did not discuss quantum of damages. It was stipulated between counsel that the damages to plaintiff's car amounted to $950, of which $900 was paid by plaintiff's collision insurer, and that plaintiff is entitled to recover the remaining sum of $50 from defendant. It was also stipulated that plaintiff incurred medical expenses amounting to $355.38.
Plaintiff contends that he is entitled to an award of $2,500 for physical pain and suffering, while defendant contends that an award of $500 would be adequate. The evidence discloses that plaintiff sustained multiple bruises and abrasions on his arms, legs and face. He also sustained a nasal injury, which the examining physician described as a deviated septum. These injuries required plaintiff to remain in the hospital one or two days following the accident. Dr. Savoy testified that a nasal injury such as that sustained by plaintiff usually was painful for three to six weeks following the injury, and that pain from the cuts and bruises which plaintiff sustained should have abated in about four weeks. The evidence indicates that plaintiff returned to the hospital in February, 1958, and had his nasal condition corrected by surgery. Plaintiff testified that he suffered pain in the nasal area for about three weeks following this surgery. There is no evidence that plaintiff will be permanently disfigured because of any injuries which he sustained as a result of this accident, and we conclude that an award of $1,000 for his physical pain and suffering is fair and adequate.
The uncontradicted evidence establishes that at the time of the accident, plaintiff was employed at a salary of $50 per week, and that because of his injuries he was absent from his work for a period of three weeks immediately following the accident. When he later returned to the hospital for surgery, he was absent from his work for an additional period of three weeks. We conclude, therefore, that plaintiff is entitled to an award of $300 for loss of earnings.
For the reasons herein assigned, the judgment of the trial court is reversed, and judgment is hereby rendered in favor of plaintiff, James Carrol Fontenot, and against defendant, Liberty Mutual Insurance Company, for the sum of $1,705.38, with legal interest thereon from date of judicial demand until paid and for all costs of this suit, including costs of this appeal.
Reversed.