ELLIS, Judge.
On July 28th, 1959 at approximately 12:00 noon, an automobile accident occurred in Hammond, La., at the intersection of Robert and Holly Streets, between an amomo-bile owned by the Consumer Credit Corporation of Bogalusa, Louisiana, and being driven by its Vice President, Fred Gideon LeBlanc, Sr., in a westerly direction on Robert Street, and an automobile owned and being driven by defendant, Thomas E. Davidson, in a northerly direction on Holly Street, and which said automobile was insured by the defendant, Hardware Mutual Casualty Company, Inc.
Suit was filed by the insurer of the Le-Blanc automobile as subrogee, having paid the Consumer Credit Corporation the sum of $649.26 because of the damages to the LeBlanc automobile as a result of the accident, as well as $50.00, the deductible portion of the insurance policy on behalf of Consumer Credit Corporation, against Thomas E. Davidson and the Hardware Mutual Casualty Company, Inc.
The defendants generally denied the allegations of plaintiff’s petition and further pled that their damages were caused solely by the negligence and fault of LeBlanc for driving at an excessive rate of speed, failing to have his vehicle under control and to keep a proper lookout and in grossly ignoring the rights of the Davidson automobile which had pre-empted the intersection before being struck. They charged other acts of negligence to LeBlanc but they are a repetition of those just enumerated. Defendants also pled in the alternative the contributory negligence of LeBlanc and assuming the position of plaintiff in recon-vention prayed for a judgment against the Consumer Credit Corporation and its insurer, Lumber Mutual Fire Insurance Company, Inc. in the total amount of $771.74.
The case was duly tried and judgment was rendered in favor of the plaintiffs as prayed for and against the defendants and plaintiffs in reconvention, rejecting their demands in full and from such judgment the defendants, plaintiffs in reconvention, have appealed.
The plaintiff, with his wife as a passenger, was traveling west on Robert Street at a speed which he estimated at 25 to 30 miles *267 per hour and as he approached the Holly Street intersection he looked to his right, as this intersection was uncontrolled by traffic signals or stop signs, in order that he might honor the superior right of way of any automobile approaching on Holly Street to his right. (LSA-R.S. 32:237, subd. A). He then turned and looked to his left, which was the direction from which the defendant was approaching the intersection, and saw the defendant’s car and realized that the latter had no intention of honoring plaintiff’s superior right of way. He immediately applied his brakes and the skid marks, including those from the front to the rear wheels of fifteen feet which were covered by the car totalled a distance of 27 feet when the front end of his car “bumped” the defendant’s car about the center or slightly to the rear thereof. Plaintiff’s car immediately stopped at the point of impact, which was in his lane of traffic in the north east quarter of the intersection near the north-south center line. The defendant’s car when bumped turned completely around with the back end forward and traveled a distance of 96 feet diagonally across Holly Street in a northwesterly direction where the left side came in contact with a cherry tree 11 to 12 inches in diameter and extensively damaged that side of the car. The damage was described by Officer Edwards as much greater from hitting the tree than from the blow of plaintiff’s car, which the officer described as being rather light.
The plaintiff’s wife testified that she did not know just what speed her husband was making but she knew that it was not very fast and that she looked to the left as their car approached the intersection and saw the defendant’s car traveling north on Holly Street “at a high rate and was a good 40 or SO feet south of the intersection, while we were right at the intersection. I yelled ‘Watch out’ but by that time we had hit.”
The accident was immediately investigated by Officer Edwards of the City of Hammond and 'he took a statement from Mr. LeBlanc whom he described as very frank and honest and who told him “that he wouldn’t say he was doing exactly 25 but maybe doing 30 or 35 * * *.” The speed limit was 25 miles per hour in that section of Hammond, and the officer put on his report that LeBlanc was speeding and explained his reason therefor by saying, “ * * * I am not an expert but these skid marks, it is pretty hard to skid a car 27 feet on di-y pavement going 25 miles an hour, which is our speed limit in the City of Hammond, there is no question about the other car having excessive speed.” The length of the LeBlanc car was estimated at approximately 15 feet and it was covering that much of the 27 feet of skid marks, leaving 12 feet to the rear of the car. It actually, therefore, skidded only 12 feet before impact. The speed of the LeBlanc car could not have been excessive under the circumstances or it could not have been stopped in this distance, and it was practically at a stop when it bumped the Davidson car. According to the speed charts the officer is in error in his opinion that it is hard to skid a car even 27 feet going 25 miles an hour.
On the other hand, Davidson told the officer right after the accident that he was “Just flying low, driving too fast, in a hurry to get back up to Independence.” Officer Edwards testified further with regard to Davidson’s statement that: “He, in direct words to me, assumed, the responsibility of the accident, you asked me so I am going to tell you, he assumed the full responsibility of the accident by his gross carelessness and excess rate of speed in the City Limits of Hammond. If I had been crossing the intersection, it would have been me or him the same, that is an opinion again.” Officer Edwards also stated that Mr. LeBlanc denied that it was his fault but Davidson never denied it and at all times said that the accident was due “to the excessive speed and driving too fast.” Officer Edwards -testified that Davidson would “have had to been doing over 50 or’ 55 miles an hour.” Davidson attempted to deiiy this on the stand but we believe the *268 District Judge was absolutely correct in rejecting his testimony.
We are therefore faced with a case in which there is no question of the negligence of Davidson, one of the defendants, but counsel argues strenuously that LeBlanc forfeited his right of way by not keeping a proper lookout and driving at an excessive speed. In the first place, LeBlanc had the right of way, and, secondly, Le-Blanc under these facts did not forfeit his right of way. He did what he was legally obligated to do as he approached this intersection, for at a reasonable distance he looked to his right in order to honor the favored right of way insofar as he was concerned. He then started to turn his head to the left and there was the defendant. LeBlanc immediately applied his brakes in an attempt to stop, which was all that he could do under the circumstances. Evidently Mrs. LeBlanc looked to the left at approximately the same time her husband looked to the right and she saw the Davidson car coming at a fast or terrific rate of speed at a distance which she estimated of 40 to SO feet from the intersection, and she immediately yelled “Watch out”, but by that time the Davidson car had come into the intersection and LeBlanc skidded into it and bumped it on the right side. LeBlanc had almost completely stopped his car at the time of the collision, whereas the Davidson vehicle continued in a northwesterly direction for some 96 feet after completely turning around and skidding sideways, striking a tree and inflicting most of the damage to his car.
In considering all the facts and the length of the skid marks we find no excessive speed as the proximate cause of the accident on the part of LeBlanc.
On the other hand the testimony reveals that Davidson was going at a speed estimated at least SO miles an hour and from the facts and circumstances probably sixty. However, at 50 miles per hour he was going 73 feet per second. The testimony also shows that the LeBlancs saw his car before he saw them for Davidson testified that when he looked and 3aw the Le-Blanc car approaching the intersection, the brakes had already been applied. Davidson then attempted to beat the LeBlanc car across the intersection which, of course, destroys any pre-emption claims that he might make, by accelerating his car.
There is some argument that a house on the corner made it a somewhat blind intersection to LeBlanc’s left, however, there is testimony that LeBlanc, when 30 feet from the intersection and after having previously looked to his right, saw the Davidson car approaching at the high rate of speed and applied his brakes.
 Under the physical facts and the testimony, we are convinced that LeBlanc was not driving at an excessive rate of speed, nor did he fail to keep a proper look out. He had a right to assume that traffic coming from his left would honor his superior right of way and he was only charged with the duty of observing the contrary, and this LeBlanc did at the earliest possible moment and immediately took action to brake his car to a stop. See Benoit v. Vincent, La.App., 132 So.2d 75, Randall v. Baton Rouge Bus Co., 240 La. 527, 124 So.2d 535; Youngblood v. Robison, 239 La. 338, 118 So.2d 431; Henderson v. Central Mutual Ins. Co., 238 La. 250, 115 So.2d 339; Steele for Use and Benefit of Steele v. State Farm Mutual Ins. Co., 235 La. 564, 105 So.2d 222; Fontenot v. Liberty Mutual Ins. Co., La.App. 3 Cir., 130 So.2d 462; Warner v. Insurance Co. of State of Pennsylvania, La.App. 3 Cir., 129 So.2d 320; Hernandez v. State Farm Mutual Auto. Ins. Co., La.App. 3 Cir., 128 So.2d 833; Andrea v. Hicks, La.App. 3 Cir., 125 So.2d 251. Had LeBlanc seen the Davidson car at 75 feet he would have only had approximately one second to try to avoid the accident, which was an impossibility. He really would not have had this much time as Davidson testified that when he got about 30 feet from the intersection was the first time *269 he saw the LeBlanc car which already had its brakes on and Davidson speeded up which would have cut the time to less than one second. It was utterly impossible for LeBlanc to avoid the accident. Under the facts, even if LeBlanc had been going 20 miles an hour or 25 miles an hour it would have been impossible for him to have avoided this accident. Whatever speed he was going was not a proximate cause of the accident.
We see no necessity for discussing the long line of cases which hold that one on the favored street who is driving at an excessive rate of speed which is the proximate cause of the accident or who fails to maintain a proper lookout and see what he should have seen forfeits his right of way, for those are not the facts in this case.
The collision in this case was due to the gross negligence of Davidson in operating his car at an excessive rate of speed of 50 miles or more per hour in a 25 mile speed zone and in failing to keep a proper lookout.
We find no error whatsoever in the judgment of the District Court and it is accordingly affirmed.
Affirmed.